**Opinion filed September 30, 2010**



In The

# Eleventh Court of Appeals

_____

## No. 11-09-00076-CR

_____

## CECIL CLAYTON WEEMS, Appellant

## V.

## STATE OF TEXAS, Appellee

**On Appeal from the County Court at Law**
**Brown County, Texas**
**Trial Court Cause No. 0800499**

## O P I N I O N

The jury convicted Cecil Clayton Weems of driving while intoxicated. The trial court assessed appellant's punishment at confinement for 180 days in the Brown County Jail. We affirm.

### Issues on Appeal

Appellant presents two issues for review. In his first issue, he contends that the prosecutor improperly commented during closing argument on his failure to testify. In his brief, appellant has failed to identify any alleged error committed by the trial court in connection with his first issue. In the trial court, appellant moved for a mistrial and, later, moved for a new trial

on the ground that the prosecutor had commented on his failure to testify. The trial court denied both motions. Therefore, we construe appellant's first issue to be that the trial court erred in denying his motion for mistrial and his motion for new trial. In appellant's second issue, he challenges the legal and factual sufficiency of the evidence to support his conviction.

*Sufficiency of the Evidence Standards of Review*

To determine if the evidence is legally sufficient, the appellate court reviews all of the evidence in the light most favorable to the verdict and determines whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Laster v. State*, 275 S.W.3d 512, 517-18 (Tex. Crim. App. 2009); *Jackson v. State*, 17 S.W.3d 664, 667 (Tex. Crim. App. 2000). To determine if the evidence is factually sufficient, the appellate court reviews all of the evidence in a neutral light. *Laster*, 275 S.W.3d at 519; *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); *Johnson v. State*, 23 S.W.3d 1, 10-11 (Tex. Crim. App. 2000); *Cain v. State*, 958 S.W.2d 404, 407-08 (Tex. Crim. App. 1997); *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). Then, the reviewing court determines whether the evidence supporting the verdict is so weak that the verdict is clearly wrong and manifestly unjust or whether the verdict is against the great weight and preponderance of the conflicting evidence. *Watson*, 204 S.W.3d at 414-15; *Johnson*, 23 S.W.3d at 10-11. The jury, as the finder of fact, is the sole judge of the weight and credibility of the witnesses' testimony. TEX. CODE CRIM. PROC. ANN. art. 36.13 (Vernon 2007), art. 38.04 (Vernon 1979).

*The Evidence at Trial*

The record shows that a one-vehicle accident involving a Ford pickup occurred in rural Brown County in the area where County Road 270, County Road 257, and Farm-to-Market Road 2525 intersect. On April 5, 2008, at about 4:14 a.m., EMS personnel were dispatched to attend to a possible snake bite victim at a residence on a county road in Brown County. Christopher Michael Bennington and his partner responded to the call. While they were on their way to the residence, they came upon the scene. Bennington said that the pickup was "off the road into the trees." Bennington testified that the area in question consisted of a tree-lined dirt road that had ditches on both sides. The EMS personnel stopped to see whether anyone was inside the pickup. They determined that no one was in the pickup or in the area, and they reported the accident to the Brown County Sheriff's Department. The EMS personnel had not seen anyone along the road as they had driven to the accident scene. They continued their trip to attend to the possible snake bite victim. As they approached the residence, they did not see anyone along the road.

2

Bennington and his partner arrived at the residence at 4:41 a.m. The accident involving the pickup had occurred about four-tenths of a mile from the front entrance gate of the residence. Appellant was lying down on the front porch of the residence. He told the EMS personnel that a snake had bitten his leg and that the snake was still in his pants. Appellant was holding onto his left pants leg with both hands and believed that he was holding the snake. Eventually, Bennington cut off appellant's pants. Bennington testified that there was no snake in appellant's pants. An examination of appellant revealed that he had not been bitten by a snake. Instead, appellant had cactus thorns in his leg. Bennington testified that appellant was "a little confused and disoriented" and that appellant gave "somewhat confused and vague answers." Appellant said that his name was "Cecil Clayton."

Brown County Deputy Sheriff Kelly Ray Marsh received a call to assist the EMS personnel at the residence on County Road 257. Deputy Marsh drove by the accident scene on his way to the residence, and he did not see anybody in the area. Deputy Marsh described the area as "very rural" and fenced-in "pasture land and ranch land." Deputy Marsh then proceeded to the residence. He said that appellant's speech was very slurred. Deputy Marsh asked appellant his name a number of times. Appellant responded but Deputy Marsh could not understand him. When Deputy Marsh asked appellant for his driver's license, he had difficulty finding it in his wallet. Deputy Marsh said that appellant dug through his wallet and "pass[ed] over his driver's license about three times" before finding the license with Deputy Marsh's help. Appellant's driver's license indicated that he lived on Hickory Street. Deputy Marsh testified that appellant was unable to get up by himself or to stand on his own. Deputy Marsh said that appellant kept saying that he had been "out for a walk."

Appellant wanted to get checked out at the hospital, and the EMS personnel transported him to the emergency room at the Brownwood Regional Medical Center. Appellant arrived at the hospital at 5:25 a.m. Stephen Ross Nichols, M.D., an emergency room physician, examined him. Dr. Nichols testified that appellant was agitated and had an irrational thought that a snake had crawled up into his pants and bitten him. The medical records indicate that appellant had "decreased mental status," was "off balance," and had "involuntary movements." Dr. Nichols said that appellant was slow to respond to commands and gave inappropriate responses. While at the hospital, appellant tested positive for methamphetamine and tetrahydrocannabinol (THC). Dr. Nichols testified that THC is a metabolic derivative of marihuana and that "THC" is a common abbreviation for marihuana. He said that methamphetamine is a stimulant that is

3

classified as a controlled substance. He also said that stimulant abuse commonly causes irrational thoughts, delusional thoughts, and hallucinations. Dr. Nichols diagnosed appellant with substance abuse. Dr. Nichols concluded that appellant's use of methamphetamine and marihuana caused his irrational thoughts and that appellant had lost the normal use of his mental faculties.

Deputy Marsh went to the accident scene. He said that a pickup had been crashed into a group of trees. He said that a name badge in the pickup had the name "Cecil" on it. Deputy Marsh believed that only one person was in the pickup when the accident occurred. He said that there were blankets in the front passenger seat and several items of clothing in the backseat. Deputy Marsh said that there were two properties between the accident scene and the residence where appellant was found. He said that the front entrance gates to both of these properties were locked.

Department of Public Safety Trooper Kyle Wayne Cook was dispatched to the accident scene. He arrived at the scene at 6:29 a.m. He spoke with Deputy Marsh when he arrived. Trooper Cook said that an insurance card that was found in the pickup showed the owner of the pickup to be "Karen Kay Keel." Trooper Cook determined that Keel was the registered owner of the pickup. Keel is appellant's mother. On the date of the accident, she lived at 714 Hickory Street in Brownwood. Trooper Cook concluded that, based on his investigation, the driver was the only person in the pickup when the accident occurred. He arrived at this conclusion because the driver's side door was unlocked, the passenger's side door was locked, the driver's airbag deployed, and the passenger's airbag did not deploy.

Trooper Cook testified that he went to the hospital to interview appellant about the accident. Trooper Cook said that appellant was slow to answer questions. He said that appellant stuttered, slurred his speech, and gave evasive answers. When appellant realized that Trooper Cook was a police officer, appellant did not want to have anything to do with him. Appellant refused to provide a blood sample upon Trooper Cook's request. Trooper Cook said that Keel came to the hospital. Appellant did not want Keel to talk with Trooper Cook. Trooper Cook said that, at one point, when the blood-pressure cuff on appellant's arm activated, appellant "jumped forward, lunged and screamed like a paranoid person would do." Trooper Cook also testified that, in general, individuals who are under the influence of methamphetamine are "[v]ery paranoid, jumpy, [and] quick to react" and "don't think logically."

4

He said that individuals who use methamphetamine "lose control of their mental and physical faculties."

Keel testified that she owned the pickup that was involved in the accident. Keel said that appellant typically drove the pickup and that he had it on the night of the accident. She said that appellant called her at 1:00 or 1:30 a.m. on the night of the accident. At that time, appellant was "a little upset," and he thought that someone was following him. Keel said that appellant called her again later and said that he needed her "to send those people." Keel responded, "Okay, what people?" Appellant then said, "No, you weren't there." Keel then asked appellant, "Are you still driving?" Appellant responded, "No," and also said that he was "out of the vehicle." Keel believed that appellant told her that he was in the woods. Keel testified that she had not had any conversations with appellant about whether he was driving the pickup when the accident occurred.

*Analysis*

To obtain a conviction for driving while intoxicated, the State must prove that the defendant operated a motor vehicle in a public place while intoxicated. TEX. PENAL CODE ANN. § 49.04(a) (Vernon 2003). The State need not establish the precise time of an accident or of the defendant's driving to prove the offense of driving while intoxicated. *Kuciemba v. State*, 310 S.W.3d 460, 462 (Tex. Crim. App. 2010); *Kennemur v. State*, 280 S.W.3d 305, 314 n.8 (Tex. App.—Amarillo 2008, pet. ref'd); *Zavala v. State*, 89 S.W.3d 134, 139 (Tex. App.—Corpus Christi 2002, no pet.). However, the State must establish "a temporal link between the defendant's intoxication and his driving." *Kuciemba*, 310 S.W.3d at 462. Thus, there must be proof from which the jury can conclude that, at the time of the driving in question, whenever that may have been, the defendant was intoxicated. *Zavala*, 89 S.W.3d at 139. A conviction for driving while intoxicated can be supported solely by circumstantial evidence. *Kuciemba*, 310 S.W.3d at 462. Being intoxicated at the scene of a traffic accident in which the defendant was the driver is some circumstantial evidence that the defendant's intoxication caused the accident, and the inference of causation is even stronger when the accident is a one-car collision with an inanimate object. *Id.*

Appellant contends that the evidence was legally and factually insufficient to establish that he operated a motor vehicle. He also contends that, if the evidence was sufficient to establish that he operated a motor vehicle, the evidence was legally and factually insufficient to establish that he operated a motor vehicle while intoxicated.

Appellant's mother, Keel, owned the pickup. Keel testified that appellant typically drove the pickup and that he had it on the night of the accident. Appellant called Keel at 1:00 or 1:30 a.m. At that time, appellant believed that someone was following him. In the later phone call, Keel asked appellant whether he was still driving. Appellant responded that he was not driving and was "out of the vehicle." The evidence showed that the accident occurred in a "very rural" area. Appellant was found about four-tenths of a mile from the accident scene. The police officers and EMS personnel did not see anyone else at the accident scene or in the surrounding area. The evidence was legally and factually sufficient to establish that appellant was driving the pickup and, therefore, operating a motor vehicle when the accident occurred.

In the jury charge in this cause, the trial court defined "intoxicated" as "not having the normal use of one's physical or mental faculties by reason of the introduction of a controlled substance, a drug, or a dangerous drug into the body." *See* TEX. PENAL CODE ANN. § 49.01(2)(A) (Vernon 2003). At the hospital, appellant tested positive for methamphetamine and marihuana, which are both controlled substances. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.032 (Vernon 2010). Dr. Nichols diagnosed appellant with substance abuse. Dr. Nichols attributed appellant's irrational thoughts to his use of methamphetamine and marihuana, and Dr. Nichols said that appellant had lost the normal use of his mental faculties. Trooper Cook's testimony supports the conclusion that appellant had lost the normal use of his mental faculties as a result of his use of methamphetamine and marihuana. Trooper Cook said that appellant stuttered, slurred his speech, and gave evasive answers at the hospital. Trooper Cook also testified about appellant's reaction to the blood-pressure cuff activating.

The State presented evidence that appellant lost the normal use of his mental and physical faculties for a lengthy period of time. Appellant had the irrational thought about a snake crawling into his pants and biting him when the EMS personnel attended to him at the residence. Appellant also thought that the snake was still in his pants and that he was holding it. Appellant was confused and disoriented, and his speech was slurred at the residence. Deputy Marsh said that appellant could not get up by himself or stand on his own. Keel's testimony supports a reasonable inference that appellant lost the normal use of his mental faculties before the accident occurred. According to Keel, appellant thought that he was being followed at 1:00 or 1:30 a.m. Later, appellant told Keel that he was no longer driving and that he needed her "to send those people."

Based on the evidence, the jury could have reasonably concluded that appellant operated the pickup in a public place while not having the normal use of his physical or mental faculties by the reason of the introduction of methamphetamine or marihuana into his body. The evidence established a temporal link between appellant's driving and his intoxication. We conclude that the evidence was legally and factually sufficient to support his conviction. Appellant's second issue is overruled.

*Prosecutor's Statements During Closing Argument*

In his first issue, appellant contends that the trial court erred in denying his motion for mistrial and motion for new trial because the prosecutor commented on his failure to testify. A comment on a defendant's failure to testify offends the Texas and United States Constitutions, as well as Texas statutory law. U.S. CONST. amend. V; TEX. CONST. art. I, § 10; TEX. CODE CRIM. PROC. ANN. art. 38.08 (Vernon 2005). A prosecutor's comment amounts to an impermissible comment on a defendant's failure to testify only if, when viewed from the jury's standpoint, the comment is manifestly intended to be, or is of such character that a typical jury would naturally and necessarily take it to be, a comment on the defendant's failure to testify. *Cruz v. State*, 225 S.W.3d 546, 548 (Tex. Crim. App. 2007); *Bustamante v. State*, 48 S.W.3d 761, 765 (Tex. Crim. App. 2001).

Appellant contends that the following statements made by the prosecutor constituted comments on his failure to testify:

> (1) Sometimes the only person who is an eye-witness is the person who committed the crime, and we're not allowed to call them as the State, and they have a right not to testify and the State – and you can't hold that against them, but we can still as a State prosecute them and prove that they committed a crime, and we can do that by looking at circumstantial evidence.

> (2) The only one who can testify to it directly, the law doesn't allow us to even consider whether or not he testifies.

> (3) The only person who can tell us the truth is the person who wouldn't cooperate. He wouldn't cooperate with the police for a reason, because he knew that if he told the police the truth, they would arrest him on the spot and he would definitely be convicted.

> Now, you may say, well, you know, he was intoxicated at the time. He was paranoid. Of course, he doesn't want to talk to the police. But, it's been nine months since then. He could have given them any information about who that driver was, and he hasn't cooperated with them since then. This is all about taking responsibility, and he doesn't want to do that.

7

Appellant's counsel did not object to these statements, request an instruction to disregard the statements, or move for a mistrial during the prosecutor's closing argument.[1] Instead, after the jury retired to deliberate, appellant's counsel moved the trial court for a mistrial on the ground that "[t]he prosecutor made several references to [appellant] not testifying." The trial court denied appellant's motion. Later, appellant complained of the prosecutor's closing argument in a motion for new trial. The trial court also denied that motion.

If the harm caused by an improper jury argument is incurable, a motion for mistrial is sufficient to preserve error for appellate review. *Cruz*, 225 S.W.3d at 548; *Young v. State*, 137 S.W.3d 65, 70 (Tex. Crim. App. 2004). However, to preserve error, a motion for mistrial must be timely. *Griggs v. State*, 213 S.W.3d 923, 927 (Tex. Crim. App. 2007). A motion for mistrial is timely only if it is made as soon as the grounds for it become apparent. *Id.*

In this cause, the ground for appellant's motion for mistrial became apparent during the prosecutor's closing argument. However, appellant failed to move for a mistrial until after the prosecutor had concluded her closing argument. As such, appellant's motion for mistrial was untimely and failed to preserve his first appellate issue for review. *Id.* Appellant's first issue is overruled.

Assuming that appellant preserved his first issue for review, we conclude that the trial court did not err in denying his motion for mistrial and his motion for new trial. We review a trial court's denial of a motion for mistrial under an abuse of discretion standard. *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007); *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004). We review a trial court's denial of a motion for new trial under the same standard. *Salazar v. State*, 38 S.W.3d 141, 148 (Tex. Crim. App. 2001).

Appellant complains about the prosecutor's statement that "we're not allowed to call them as the State, and they have a right not to testify and the State -- and you can't hold that against them." The prosecutor made this statement in the context of explaining that the State may use circumstantial evidence and is not required to present eyewitness testimony to prove that an individual committed a crime. Appellant also complains about the prosecutor's statement

---

[1] In an affidavit in support of appellant's motion for new trial, appellant's counsel explained that he had not objected during closing argument to the prosecutor's statements because he had not heard them. If appellant's counsel could not hear the prosecutor's closing argument, he should have requested relief from the trial court. The trial court, among other things, could have instructed the prosecutor to talk louder or permitted appellant's counsel to move to a place in the courtroom where he could hear the prosecutor's argument.

that "[t]he only one who can testify to it directly, the law doesn't allow us to even consider whether or not he testifies." The trial court's jury charge contained the following instruction regarding appellant's election not to testify:

> Our law provides that a defendant may testify in his own behalf if he elects to do so. This, however, is a privilege afforded to a defendant, and, in the event he elects not to testify, that fact cannot be taken as a circumstance against him. In this case, the Defendant has elected not to testify, and you are instructed that you cannot and must not refer or allude to that fact throughout your deliberations or take it into consideration for any purpose whatsoever as a circumstance against the defendant.[2]

In the complained-of comments, the prosecutor essentially restated the trial court's instructions to the jury. She reminded the jury that it could not consider appellant's election not to testify. The prosecutor recognized appellant's right not to testify; she did not comment negatively on appellant's failure to testify. Therefore, the prosecutor's statements did not amount to improper comments on appellant's failure to testify. *Fuentes v. State*, 991 S.W.2d 267, 275 (Tex. Crim. App. 1999); *Bullard v. State*, 706 S.W.2d 329, 331 (Tex. App.—Houston [14th Dist.] 1986, pet. ref'd).

Appellant also complains about the prosecutor's statement that "[t]he only person who can tell us the truth is the person who wouldn't cooperate." As set forth above, immediately after this statement, the prosecutor stated that "[appellant] wouldn't cooperate with the police for a reason." The prosecutor then made additional statements about appellant's failure to cooperate with the police. Trooper Cook's testimony supports the conclusion that appellant would not cooperate with the police. Trooper Cook said that, once appellant realized he was a police officer, appellant did not want to have anything to do with him. Appellant also did not want Keel to talk to Trooper Cook. Viewed in context, the complained-of statement by the prosecutor relates to appellant's lack of cooperation with the police rather than his failure to testify. As such, the statement did not constitute an impermissible comment on appellant's failure to testify.

The prosecutor did not impermissibly comment on appellant's failure to testify. Therefore, assuming that appellant preserved error, we conclude that the trial court did not abuse its discretion in denying appellant's motion for mistrial and his motion for new trial.

We also conclude that the trial court did not err in denying appellant's motions for another reason. Except in the most blatant instances, an instruction to disregard a comment on

---

[2]The trial court's written jury charge contained a typographical error. It stated "what purpose whatsoever" instead of "any purpose whatsoever." The trial court corrected the instruction when it read the instructions to the jury.

the defendant's failure to testify will cure any harm caused by the comment. *Moore v. State*, 999 S.W.2d 385, 405-06 (Tex. Crim. App. 1999). If a defendant fails to request an instruction to disregard and the instruction would have cured any harm, the trial court does not abuse its discretion in denying a motion for mistrial. *Young*, 137 S.W.3d at 72. Even if the prosecutor's statements in this cause amounted to comments on appellant's failure to testify, they were not so blatant that they would have rendered an instruction to disregard ineffective. *Moore*, 999 S.W.2d at 405-06. Because appellant failed to request an instruction to disregard, the trial court did not abuse its discretion in denying his motions. *Young*, 137 S.W.3d at 72.

*This Court's Ruling*

The judgment of the trial court is affirmed.


TERRY McCALL

JUSTICE

September 30, 2010

Publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Strange, J.