Opinion filed August 23,
2012

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                                         No. 11-10-00260-CR

                                                    __________

 

                             CLIFFORD
LEON ANGLIN, Appellant

 

                                                             V.

 

                                      STATE
OF TEXAS, Appellee



 

                                   On
Appeal from the 118th District Court

                                                          Howard
County, Texas

                                                      Trial
Court Cause No. 12948

 



 

M E M O R A N D
U M   O P I N I O N

 

            The
grand jury indicted Clifford Leon Anglin for the offense of aggravated robbery,
and the jury found him guilty and assessed his punishment at confinement for a
term of sixty years in the Institutional Division of the Texas Department of
Criminal Justice.  On appeal, he argues that the evidence was insufficient to
support his conviction and that, because it was insufficient, he was denied his
due process rights under the U.S. Constitution.  He also complains of improper jury
argument by the prosecutor.  We affirm.

            On
the evening of June 3, 2010, David Canales, Jr. and Jennifer Canales were at
home with their three children when they were the victims of a home invasion
robbery.  Both of the Canaleses testified about that night.  David was sitting
in the living room when someone kicked in the front door of the home and robbed
him at gunpoint.  David saw three men enter; they wore black clothes and had
bandanas around their mouths.  The first thing he saw was a shotgun and two
handguns pointed at his face.  He was not able to tell who was holding the
shotgun, but he “knew the three guys that went through the front door.”  First,
one of the men pointed a shotgun at him, and then the other two men each pointed
a handgun at him as well.  The men ordered David to get on the floor and give
them all his money.  David emptied his pockets of cash and car keys, but kept
his phone in his pocket.  David testified that, while he emptied his pockets, appellant
stood behind him and pointed a gun at David’s head.  David was repeatedly struck
in the back of his head with a handgun and began to cover his head with his
hands.  When he put his hands on his head, one assailant saw David’s wedding
ring and demanded that David take it off and give it to them.  Although David
gave them the ring, the attackers began to kick him in his ribs.  Jennifer
yelled for the men to “stop.”  They kicked David in the head several more times
and then demanded that Jennifer give them her purse and money.  Jennifer told
them that her purse was on the couch.  David briefly saw one of them run to the
couch and empty the contents of the purse.

            David
testified that he had the opportunity to see appellant twice during the
incident.  He saw appellant once when he came in the front door and again when
the assailants left the house. David saw appellant point a handgun at him and heard
appellant say, “If anybody comes, I’m going to kill you.”  Even though appellant
was wearing a bandana around his mouth, David testified, “I noticed him easy right
here (indicating).”  David grew up with appellant and had known him for almost
twenty years—since they were both about six or seven years old.  David
recognized appellant’s eyes and voice and the “stockiness” of his build.  He
had no doubt about appellant’s identity and said, “I knew him just right off
the bat.  I knew exactly who it was as soon as they came to the door.”  There
was no question and no doubt in David’s mind about appellant’s identity.

            Jennifer
testified that she was in the bedroom dozing with two of her children when she
heard pounding on the front door and heard the screen door “pop off.”  She got
up, went to the doorway of the living room, and saw three men come in the front
door.  She heard them tell David to get down on the ground.  Two of the men
went toward David, and the one holding the shotgun came toward Jennifer.  The
attackers made Jennifer take the kids back to the bedroom and made her get on
her knees beside the bathroom.  Jennifer identified the man holding a shotgun
to her face during all of this as someone she knew as “Gato,” also known as
Felix Jaramillo.  Jennifer’s daughter clung to her leg, and her two-year-old son,
Aaron, tried to get to David.  The assailants asked Jennifer for jewelry,
money, and anything else of value in the room. She directed them to her jewelry
drawer.  They also found her registered handgun in her closet and took it.  She
told them that her money was on the couch in the living room.  Gato went to the
living room to get the money.  Aaron tried to get into the living room; Gato
pointed the shotgun at the two-year-old child and said, “Don’t f-----g
move.”  Then he told Jennifer, “[G]et your f-----g kid. . . . Get up and come
to the living room.”  Jennifer heard the attackers “pounding on” her husband in
the other room, but she could not see anything.  After the attackers got what
they wanted out of Jennifer’s room, they brought her back to the living room
where she saw them “pounding on” David again.

            Meanwhile,
“there were two boys in the back room,” whom Jennifer never saw that went into
the children’s bedroom to search for valuables.  They flipped the mattresses
and made a mess, but Jennifer never saw them.  They never came out of the back
room.  Before they left, one of the men said, “Don’t call the cops.  We’ll kill
you.  We’ll come back.  We have somebody watching the house.”  Then, they all
got out of the house and broke the porch light as they left.

            Jennifer
identified appellant as one of the men who was in the living room with David
during the attack.  Jennifer had also known appellant for a long time.  The two
grew up in the same part of town and knew each other’s families.  Jennifer was
not fooled by the bandana disguise.  She knew what appellant looked like and
recognized his eyes, eyebrows, and “chubby” hands.  There was no doubt in her
mind about appellant’s identity.  She was “100 percent sure.”  She noticed the
clothes that everyone wore and had the opportunity to look at the assailants
“up and down.”  She saw appellant come in the front door, walk up to her
husband, and say, “Get the f--k down.”  She was standing in the doorway of the
bedroom when the door flew open and was less than five feet from the front
door.

            Appellant’s
accomplice, Brian J. Gonzales, testified that, before the robbery, appellant told
everyone what they were going to do.  Appellant devised the plan.  Gonzales’s
job was to watch the car while the others were inside the Canaleses’ home.  Gonzales’s
girlfriend lived on the same street as the Canaleses, and the group parked
their car in her driveway.  After the robbery, the assailants came outside, and
appellant ordered Gonzales to get inside the vehicle with the others.  As
Gonzales started for his girlfriend’s house instead, he heard what he thought
was the click of a gun cocking.  He took this as a threat and got in the car.  As
appellant drove out of the driveway, a police officer passed by in his cruiser.
 The officer turned around, turned his lights on, and began chasing appellant’s
vehicle.  As appellant slowed down to stop the car, his passengers began to throw
various things out of the vehicle.  After appellant stopped the vehicle, the
passengers got out and started to run from the vehicle.  Gonzales stumbled
before he could break into a run and was tackled by Investigator John Haynes of
the Big Spring Police Department.  While Investigator Haynes held Gonzales to
the ground, appellant drove away in the vehicle.

            Appellant
testified that he was not involved in the robbery and that he actually spent
the evening and the entire night at a nearby motel with a female companion.

Legal
Sufficiency

            In
his first issue, appellant argues that the evidence was legally and factually insufficient
to support his conviction.  In his second issue, appellant argues that, because
there was insufficient evidence, he was denied due process and his conviction
should be reversed.  He contends that the only evidence at trial was that of an
accomplice witness.

            The
Texas Court of Criminal Appeals has held that the Jackson v. Virginia[1]
legal sufficiency standard is the only standard a reviewing court should apply
in determining whether the evidence is sufficient to support each element of a
criminal offense that the State is required to prove beyond a reasonable doubt.
 See Brooks v. State, 323 S.W.3d 893, 894–95 (Tex. Crim. App. 2010).  Accordingly,
we will not independently consider appellant’s challenge to the factual
sufficiency of the evidence.

            Legal
sufficiency is the constitutional minimum required by the Due Process Clause of
the Fourteenth Amendment to sustain a criminal conviction.  See Jackson v.
Virginia, 443 U.S. 307, 315–16 (1979); see also Escobedo v. State, 6
S.W.3d 1, 6 (Tex. App.—San Antonio 1999, pet. ref’d).  The standard for
reviewing a legal sufficiency challenge is whether any rational trier of fact
could have found the essential elements of the offense beyond a reasonable
doubt.  See Jackson, 443 U.S. at 320; see also Johnson v. State,
871 S.W.2d 183, 186 (Tex. Crim. App. 1993).  The evidence is examined in the
light most favorable to the verdict.  See Jackson, 443 U.S. at 320; Johnson,
871 S.W.2d at 186.  This standard incorporates the responsibility of the trier
of fact to resolve conflicts in the testimony, to weigh the evidence, and to
draw reasonable inferences from the basic facts to ultimate facts.  See
Jackson, 443 U.S. at 319.

            Both
David and Jennifer identified appellant as one of the assailants who entered
their home on the night of the robbery.  Their testimony was unequivocal on the
matter.  They knew appellant and recognized him immediately.  Appellant states in
his brief that the testimony of the Canaleses was “tainted,” but he does not
provide any explanation for this declaration.  We do not see any basis for this
assertion.

            Appellant
also cites the accomplice witness rule, which provides that a conviction cannot
stand on an accomplice witness’s testimony unless the testimony is corroborated
by other, non-accomplice evidence that tends to connect the accused to the
offense.  See Tex. Code Crim.
Proc. Ann. art. 38.14 (West 2005).  Gonzales’s testimony about appellant’s
involvement in the crime was corroborated by David’s and Jennifer’s testimony.  Corroborating
evidence need not be sufficient by itself to establish guilt, nor must it
directly connect the accused to the offense.  Cathey v. State, 992
S.W.2d 460, 462 (Tex. Crim. App. 1999).  Rather, the evidence “need only tend
to connect” the accused to the offense.  Id.  However, in this case, David’s
or oweverHHJennifer’s testimony alone would
have been sufficient evidence of appellant’s guilt to support a conviction. We
hold that the evidence was legally sufficient.  Thus, appellant’s due process
rights were not violated.  Appellant’s first two issues are overruled.

Improper
Argument

            In
his third issue, appellant argues that the prosecutor’s closing remarks to the
jury were improper and constituted reversible error.  However, appellant did
not object to the prosecutor’s comments at trial.  When a defendant fails to
object to jury argument, he forfeits his right to raise the issue on appeal,
even if the issue is constitutional in nature.  Threadgill v. State, 146
S.W.3d 654, 670 (Tex. Crim. App. 2004); Cockrell v. State, 933 S.W.2d
73, 89 (Tex. Crim. App. 1996); Weems v. State, 328 S.W.3d 172, 179 (Tex.
App.—Eastland 2010, no pet.).  Appellant’s third issue is overruled.

            The
judgment of the trial court is affirmed.

 

August 23, 2012                                                                                 PER
CURIAM

Do not publish. 
See Tex. R. App. P.
47.2(b).

Panel consists of: Wright, C.J.,

McCall, J., and Kalenak, J.









[1]Jackson v. Virginia, 443 U.S. 307 (1979).