**Opinion filed August 23, 2012**



In The

# Eleventh Court of Appeals

_____

## No. 11-10-00260-CR
_____

## CLIFFORD LEON ANGLIN, Appellant

## V.

## STATE OF TEXAS, Appellee

**On Appeal from the 118th District Court**
**Howard County, Texas**
**Trial Court Cause No. 12948**

## MEMORANDUM OPINION

The grand jury indicted Clifford Leon Anglin for the offense of aggravated robbery, and the jury found him guilty and assessed his punishment at confinement for a term of sixty years in the Institutional Division of the Texas Department of Criminal Justice. On appeal, he argues that the evidence was insufficient to support his conviction and that, because it was insufficient, he was denied his due process rights under the U.S. Constitution. He also complains of improper jury argument by the prosecutor. We affirm.

On the evening of June 3, 2010, David Canales, Jr. and Jennifer Canales were at home with their three children when they were the victims of a home invasion robbery. Both of the Canaleses testified about that night. David was sitting in the living room when someone kicked

in the front door of the home and robbed him at gunpoint. David saw three men enter; they wore black clothes and had bandanas around their mouths. The first thing he saw was a shotgun and two handguns pointed at his face. He was not able to tell who was holding the shotgun, but he "knew the three guys that went through the front door." First, one of the men pointed a shotgun at him, and then the other two men each pointed a handgun at him as well. The men ordered David to get on the floor and give them all his money. David emptied his pockets of cash and car keys, but kept his phone in his pocket. David testified that, while he emptied his pockets, appellant stood behind him and pointed a gun at David's head. David was repeatedly struck in the back of his head with a handgun and began to cover his head with his hands. When he put his hands on his head, one assailant saw David's wedding ring and demanded that David take it off and give it to them. Although David gave them the ring, the attackers began to kick him in his ribs. Jennifer yelled for the men to "stop." They kicked David in the head several more times and then demanded that Jennifer give them her purse and money. Jennifer told them that her purse was on the couch. David briefly saw one of them run to the couch and empty the contents of the purse.

David testified that he had the opportunity to see appellant twice during the incident. He saw appellant once when he came in the front door and again when the assailants left the house. David saw appellant point a handgun at him and heard appellant say, "If anybody comes, I'm going to kill you." Even though appellant was wearing a bandana around his mouth, David testified, "I noticed him easy right here (indicating)." David grew up with appellant and had known him for almost twenty years—since they were both about six or seven years old. David recognized appellant's eyes and voice and the "stockiness" of his build. He had no doubt about appellant's identity and said, "I knew him just right off the bat. I knew exactly who it was as soon as they came to the door." There was no question and no doubt in David's mind about appellant's identity.

Jennifer testified that she was in the bedroom dozing with two of her children when she heard pounding on the front door and heard the screen door "pop off." She got up, went to the doorway of the living room, and saw three men come in the front door. She heard them tell David to get down on the ground. Two of the men went toward David, and the one holding the shotgun came toward Jennifer. The attackers made Jennifer take the kids back to the bedroom and made her get on her knees beside the bathroom. Jennifer identified the man holding a shotgun to her face during all of this as someone she knew as "Gato," also known as Felix

Jaramillo. Jennifer's daughter clung to her leg, and her two-year-old son, Aaron, tried to get to David. The assailants asked Jennifer for jewelry, money, and anything else of value in the room. She directed them to her jewelry drawer. They also found her registered handgun in her closet and took it. She told them that her money was on the couch in the living room. Gato went to the living room to get the money. Aaron tried to get into the living room; Gato pointed the shotgun at the two-year-old child and said, "Don't f-----g move." Then he told Jennifer, "[G]et your f-----g kid. . . . Get up and come to the living room." Jennifer heard the attackers "pounding on" her husband in the other room, but she could not see anything. After the attackers got what they wanted out of Jennifer's room, they brought her back to the living room where she saw them "pounding on" David again.

Meanwhile, "there were two boys in the back room," whom Jennifer never saw that went into the children's bedroom to search for valuables. They flipped the mattresses and made a mess, but Jennifer never saw them. They never came out of the back room. Before they left, one of the men said, "Don't call the cops. We'll kill you. We'll come back. We have somebody watching the house." Then, they all got out of the house and broke the porch light as they left.

Jennifer identified appellant as one of the men who was in the living room with David during the attack. Jennifer had also known appellant for a long time. The two grew up in the same part of town and knew each other's families. Jennifer was not fooled by the bandana disguise. She knew what appellant looked like and recognized his eyes, eyebrows, and "chubby" hands. There was no doubt in her mind about appellant's identity. She was "100 percent sure." She noticed the clothes that everyone wore and had the opportunity to look at the assailants "up and down." She saw appellant come in the front door, walk up to her husband, and say, "Get the f--k down." She was standing in the doorway of the bedroom when the door flew open and was less than five feet from the front door.

Appellant's accomplice, Brian J. Gonzales, testified that, before the robbery, appellant told everyone what they were going to do. Appellant devised the plan. Gonzales's job was to watch the car while the others were inside the Canaleses' home. Gonzales's girlfriend lived on the same street as the Canaleses, and the group parked their car in her driveway. After the robbery, the assailants came outside, and appellant ordered Gonzales to get inside the vehicle with the others. As Gonzales started for his girlfriend's house instead, he heard what he thought was the click of a gun cocking. He took this as a threat and got in the car. As appellant drove out of the driveway, a police officer passed by in his cruiser. The officer turned around, turned

3

his lights on, and began chasing appellant's vehicle. As appellant slowed down to stop the car, his passengers began to throw various things out of the vehicle. After appellant stopped the vehicle, the passengers got out and started to run from the vehicle. Gonzales stumbled before he could break into a run and was tackled by Investigator John Haynes of the Big Spring Police Department. While Investigator Haynes held Gonzales to the ground, appellant drove away in the vehicle.

Appellant testified that he was not involved in the robbery and that he actually spent the evening and the entire night at a nearby motel with a female companion.

*Legal Sufficiency*

In his first issue, appellant argues that the evidence was legally and factually insufficient to support his conviction. In his second issue, appellant argues that, because there was insufficient evidence, he was denied due process and his conviction should be reversed. He contends that the only evidence at trial was that of an accomplice witness.

The Texas Court of Criminal Appeals has held that the *Jackson v. Virginia*[1] legal sufficiency standard is the only standard a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt. *See Brooks v. State*, 323 S.W.3d 893, 894–95 (Tex. Crim. App. 2010). Accordingly, we will not independently consider appellant's challenge to the factual sufficiency of the evidence.

Legal sufficiency is the constitutional minimum required by the Due Process Clause of the Fourteenth Amendment to sustain a criminal conviction. *See Jackson v. Virginia*, 443 U.S. 307, 315–16 (1979); *see also Escobedo v. State*, 6 S.W.3d 1, 6 (Tex. App.—San Antonio 1999, pet. ref'd). The standard for reviewing a legal sufficiency challenge is whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 320; *see also Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). The evidence is examined in the light most favorable to the verdict. *See Jackson*, 443 U.S. at 320; *Johnson*, 871 S.W.2d at 186. This standard incorporates the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319.

---

[1]*Jackson v. Virginia*, 443 U.S. 307 (1979).

Both David and Jennifer identified appellant as one of the assailants who entered their home on the night of the robbery. Their testimony was unequivocal on the matter. They knew appellant and recognized him immediately. Appellant states in his brief that the testimony of the Canaleses was "tainted," but he does not provide any explanation for this declaration. We do not see any basis for this assertion.

Appellant also cites the accomplice witness rule, which provides that a conviction cannot stand on an accomplice witness's testimony unless the testimony is corroborated by other, non-accomplice evidence that tends to connect the accused to the offense. *See* TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2005). Gonzales's testimony about appellant's involvement in the crime was corroborated by David's and Jennifer's testimony. Corroborating evidence need not be sufficient by itself to establish guilt, nor must it directly connect the accused to the offense. *Cathey v. State*, 992 S.W.2d 460, 462 (Tex. Crim. App. 1999). Rather, the evidence "need only tend to connect" the accused to the offense. *Id.* However, in this case, David's or Jennifer's testimony alone would have been sufficient evidence of appellant's guilt to support a conviction. We hold that the evidence was legally sufficient. Thus, appellant's due process rights were not violated. Appellant's first two issues are overruled.

## *Improper Argument*

In his third issue, appellant argues that the prosecutor's closing remarks to the jury were improper and constituted reversible error. However, appellant did not object to the prosecutor's comments at trial. When a defendant fails to object to jury argument, he forfeits his right to raise the issue on appeal, even if the issue is constitutional in nature. *Threadgill v. State*, 146 S.W.3d 654, 670 (Tex. Crim. App. 2004); *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996); *Weems v. State*, 328 S.W.3d 172, 179 (Tex. App.—Eastland 2010, no pet.). Appellant's third issue is overruled.

The judgment of the trial court is affirmed.

August 23, 2012                                                          PER CURIAM

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Kalenak, J.