In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-14-00424-CR**
_____

**SAMANTHA MEAGAN PACIGA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the County Court at Law No. 2**
**Jefferson County, Texas**
**Trial Cause No. 300816**

**MEMORANDUM OPINION**

Appellant Samantha Meagan Paciga appeals her conviction for the offense of driving while intoxicated. In one issue, Paciga argues that the trial court erred in denying her motion for an instructed verdict because the evidence presented at trial was insufficient to support her conviction. We affirm the judgment of the trial court.

## I. The Evidence

On August 28, 2013, at approximately 11:00 p.m., an officer with the Beaumont Police Department responded to a radio dispatch concerning a suspicious vehicle near the intersection of Seventh Street and the I-10 service road in Beaumont, Texas. When the officer arrived at that location, he observed a blue Toyota Corolla that had left the service road and come to rest in a grassy area next to a chain link fence, which separated the service road from a railroad yard. According to the officer, the Toyota was located only a few feet from the fence, and a portion of the fence appeared to have "just been knocked over." A woman, whom the officer later identified as Paciga, was sitting a few feet away from the Toyota. No one else was in the vicinity of the vehicle except for a railroad employee who had made the initial call to the police, and the officer testified that he had no reason to believe that the railroad employee had been involved in the accident in any way. No one else appeared at the scene claiming the vehicle.

At the scene, the officer approached Paciga and spoke with her. According to the officer, Paciga stated that she had just left Club Heat and was heading home to her residence in Groves, Texas. The officer testified that Club Heat is a local night club, which is located on the service road of I-10 and is less than a mile from the location of the accident. While speaking to Paciga, the officer noticed that

Paciga appeared to be intoxicated: her speech was slow and slurred; she was unsteady on her feet; her eyes were red and glassy; and she had an odor of an alcoholic beverage emitting from her person. He also observed that Paciga had a set of car keys in her hand. The officer testified that the keys were the "keys to the vehicle[,]"although he acknowledged that he did not personally check to see whether the keys actually started the Toyota.

The officer checked the registration of the Toyota and discovered that the vehicle was registered to two individuals named Jonathan House and Daniel House at an address in Groves, Texas. He testified that although Paciga's name was not listed on the vehicle registration, the address on the registration matched the address on Paciga's driver's license.

The officer testified that given the fact that the Toyota was located "in a grassy area adjacent to a fence that appeared to [have been] knocked over recently" and that the grassy area was next to the service road, it was his opinion that the Toyota would have had to have traveled down that road or the highway in order to have made contact with the fence. Based on this conclusion, and due to Paciga's apparent intoxication, the officer requested assistance from another patrol unit, and a second officer arrived at the scene a short time later. The second officer took

over the potential DWI investigation, while the initial officer continued the investigation of the vehicle accident.

The second officer testified that on August 28, 2013, he was assigned to the Beaumont Police Department's DWI Select Traffic Enforcement Program. As a member of that task force, he was trained to identify signs of intoxication, was certified in the administration of field sobriety tests, and had performed such testing on many occasions. At approximately 11:15 p.m. on the night in question, he was dispatched to a location on the I-10 service road in reference to a car wreck. He explained that in that location, the service road intersects with Seventh Street. At or shortly after Seventh Street, the service road turns under the freeway, allowing vehicles to turn around and go back in the opposite direction. When the second officer arrived at the scene, he observed a blue Toyota Corolla that appeared to have left the roadway near the turn-around on the service road. The Toyota was "[l]ocated near the railroad tracks and sitting on a portion of the chain link fence it had crashed through." A white female was sitting next to the Toyota. At trial, the second officer identified Paciga in the courtroom as the female he observed sitting by the Toyota. He testified that no one else was in the vicinity of the accident, aside from other law enforcement officers and a civilian "ride[-]along" who was riding in his patrol car that night.

When the second officer made contact with Paciga, she was still sitting on the ground next to the vehicle. She appeared disoriented and was unable to stand up without assistance. He had Paciga walk with him to the front of his patrol car so that their discussion would be recorded by his in-car camera. While Paciga was walking to the front of the patrol car, she fell and required assistance standing up. As the second officer spoke to Paciga, he observed that her eyes were red and glassy, she had a slow reaction time when answering questions and performing tasks, her speech was slurred, and she was unable to answer simple questions or follow basic instructions. In addition, he noticed that she had a strong odor of an alcoholic beverage coming from her breath and person. Based on these observations, the officer concluded that Paciga was likely intoxicated.

The second officer stated that he asked Paciga to produce her driver's license. She had difficulty performing this task, but ultimately handed him her license. He asked Paciga where she had been coming from that night, and she told him that she "was coming from the city of Groves." He then asked her where she was going, and she stated that she was "going to Groves." The second officer then asked, "[Y]ou're coming from Groves, going to Groves[?]" and, according to the officer, Paciga responded, "Lowes to Winnie." During this conversation, the second officer noticed that Paciga was holding a set of car keys in her hand. He

5

later took the car keys from Paciga and gave them to the first officer. The second officer testified that although he did not personally check to see if the keys were would start the Toyota, the tow truck driver who arrived at the scene verified that they would.

Based on the fact that the Toyota "crashed through" a fence adjacent to the service road, the second officer testified that it was his opinion that the Toyota would have had to have traveled down that road or the highway in order to hit the chain link fence. He also testified that given the circumstances surrounding the crash, including the fact that Paciga was the only person at the scene of the accident when the police arrived and that she had a set of car keys in her hand, it was his opinion that Paciga had been driving the vehicle at the time it crashed.

After speaking to Paciga, the second officer handcuffed her and placed her in the back seat of his patrol unit so that he could transport her to an area with a level surface to perform the standardized field sobriety tests. After Paciga was placed in the back seat of the patrol unit, Paciga slipped her handcuffs in front of her and began kicking the windows of the patrol unit. Shortly thereafter, the second officer transported Paciga to a nearby parking lot where he administered three standardized field sobriety tests to Paciga: (1) the horizontal gaze nystagmus test; (2) the walk-and-turn test; and (3) the one-leg-stand test. The second officer

6

testified that Paciga exhibited six out of six possible clues of intoxication on the horizontal gaze nystagmus test, six out of eight possible clues of intoxication on the walk-and-turn test, and three out of four possible clues of intoxication on the one-leg-stand test. Based on those results, he concluded that Paciga "had lost the normal use of her mental and physical faculties" due to intoxication from the consumption of alcohol and placed her under arrest for DWI. Thereafter, the second officer requested a sample of Paciga's breath, but she refused to give one.

At trial, the State introduced a copy of a video that was recorded by a camera mounted on the dashboard of the second officer's patrol unit on the night of the accident. The video was admitted into evidence and played for the jury. The video largely corroborates the second officer's testimony. The video shows that the second officer arrived at the scene of the accident at 11:17 p.m. The first responding officer was already present at the scene when the second officer arrived. In the video, Paciga can be seen walking from the location of the Toyota to the front of the second officer's patrol car with a set of car keys in her hand. As she is walking, Paciga falls and has to take off her shoes to stand up again. Once in front of the patrol car, the second officer asks Paciga, "Where are you coming from tonight?" and Paciga responds, "Groves." The second officer then asks, "Where are you headed to?" and Paciga again states, "Groves." He asks, "You came from

7

Groves and you're headed to Groves?" and Paciga states, "Yes." The second officer then asks Paciga where she thinks she is, and Paciga responds, "Close to Winnie." The second officer asks Paciga if she has had anything to drink that night, and Paciga nods and appears to respond affirmatively. Approximately ten minutes later, he takes Paciga to a nearby parking lot, where he administers three standardized field sobriety tests to Paciga. At the conclusion of the third test, the second officer places Paciga under arrest for DWI.

The State also introduced a copy of a second video that was recorded by a camera mounted in the back seat of the second officer's patrol car on the night in question. The video was admitted into evidence and played for the jury. The video shows Paciga's movements in the back seat of the patrol unit both before and after her arrest. In the video, Paciga can be seen getting into the back seat of the patrol car immediately following her arrest. Once in the back seat, Paciga asks, "Is my sister's car going to be left here?" The second officer responds that the vehicle is going to be towed to a safe location. Paciga then says, "Am I going to have to pay for towing? . . . . I just want – seriously, I would rather it just be here. . . . I can't pay for that." The officer then explains that they cannot leave the vehicle at the scene because she crashed into a fence on railroad property.

In addition, the State introduced a copy of the notice of suspension of Paciga's driver's license (a DIC-25 form), and the notice was admitted into evidence. In the bottom, right-hand corner of the notice, there is a photocopy of the front of a driver's license. The second officer testified that the driver's license depicted in the notice is the driver's license that Paciga presented to him on the night of the accident. The address on the driver's license is the same address that was listed on the vehicle registration for the Toyota. However, the driver's license also states that it expired on "01-08-08[,]" over five years before the accident in question occurred. At trial, Paciga's attorney introduced a photocopy of a second driver's license, which was admitted into evidence. Similar to the driver's license in the notice of suspension, the second driver's license states that it is issued to Paciga and bears the same driver's license number as the license in the notice of suspension. However, the second driver's license indicates that it was issued on "06/04/2012" and expires on "01/08/2015[.]" It lists a different address for Paciga in Groves, Texas. On cross-examination, the second officer was shown the photocopy of the second driver's license, after which he acknowledged that Paciga presented him with an expired driver's license on the night of the accident. However, he stated that he nevertheless considered the expired license to be a valid form of identification and that when he ran the license through dispatch on the

9

night of the accident, he was told that Paciga did in fact have a valid driver's license that expired in 2015.

At the close of the State's case-in-chief, Paciga moved for an instructed verdict of acquittal. In support of the motion, Paciga argued that there was no evidence that Paciga operated a motor vehicle. In addition, and alternatively, she argued that the only evidence tending to prove that Paciga operated a motor vehicle were Paciga's own statements to the police officers and that a defendant's extrajudicial admissions, without more, are insufficient to prove the *corpus delicti* of the offense of DWI. After hearing argument from both sides, the trial court denied Paciga's motion.

Paciga did not testify at trial or call any witnesses to testify on her behalf, and after closing arguments, the jury found Paciga guilty of driving while intoxicated. The trial court sentenced Paciga to ninety days in jail, but suspended her sentence and placed her on one year of probation. The trial court also assessed a fine of $300. This appeal followed.

## II.    Sufficiency of the Evidence

In her sole issue, Paciga argues that the trial court erred in denying her motion for an instructed verdict of acquittal because the evidence is insufficient to support her conviction for driving while intoxicated. Specifically, Paciga contends

that "[t]he evidence does not show beyond a reasonable doubt that [she] was driving a motor vehicle while intoxicated."[1] She also argues that her extrajudicial admissions at the scene "fail[] to establish the *corpus delicti* to support a DWI conviction."

"A motion for instructed verdict is essentially a trial level challenge to the sufficiency of the evidence." *Smith v. State*, No. PD-1615-14, 2016 WL 3193479, *4 (Tex. Crim. App. June 8, 2016). We therefore treat an issue complaining about a trial court's failure to grant a motion for an instructed verdict as a challenge to the legal sufficiency of the evidence. *See Williams v. State*, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996); *Gloede v. State*, 328 S.W.3d 668, 674 (Tex. App.—

---

[1] Paciga's motion for an instructed verdict challenged the sufficiency of the evidence showing that Paciga operated a motor vehicle, and asserted that the State failed to satisfy the *corpus delicti* rule with respect to the element of operation of a motor vehicle. The motion did not challenge the sufficiency of the evidence showing that Paciga was intoxicated at the time she operated the motor vehicle. Nevertheless, Paciga argues in her brief on appeal that "[t]he evidence does not show beyond a reasonable doubt that Appellant was driving a motor vehicle while intoxicated." Because a legal sufficiency point may be raised for the first time on appeal, and because we are required to construe the arguments in Paciga's brief liberally, we will treat Paciga's appellate issue as challenging the sufficiency of the evidence to support both: (1) that Paciga operated a motor vehicle, and (2) that Paciga was intoxicated at the time she drove. *See* Tex. R. App. P. 38.9; *Moff v. State*, 131 S.W.3d 485, 488 (Tex. Crim. App. 2004) ("If a defendant challenges the legal sufficiency of the evidence to support his conviction on direct appeal, the appellate court always has a duty to address that issue, regardless of whether it was raised in the trial court.").

11

Beaumont 2010, no pet.). We review the sufficiency of the evidence to support a conviction under the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). *See Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). Under that standard, we view all of the evidence in the light most favorable to the verdict and determine, based on that evidence and any reasonable inferences therefrom, whether any rational factfinder could have found the essential elements of the offense beyond a reasonable doubt. *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013) (citing *Jackson*, 443 U.S. at 318-19).The jury is the sole judge of the credibility and weight to be attached to the testimony of the witnesses. *Id*. In this role, the jury may choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). Further, the jury is permitted to draw multiple reasonable inferences from facts as long as each is supported by the evidence presented at trial. *Temple*, 390 S.W.3d at 360. When the record supports conflicting inferences, we presume that the jury resolved those conflicts in favor of the verdict and therefore defer to that determination. *Id*.

In reviewing the sufficiency of the evidence, we consider all of the evidence in the record, regardless of whether it was properly admitted. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Direct and circumstantial evidence are

equally probative of an actor's guilt, and "'circumstantial evidence alone can be sufficient to establish guilt.'" *Temple*, 390 S.W.3d at 359 (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)). In a circumstantial evidence case, each fact need not point directly and independently to the guilt of the defendant so long as the combined and cumulative force of all the incriminating circumstances warrants the conclusion that the defendant is guilty. *Id.* (quoting *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993)); *Hooper*, 214 S.W.3d at 13. "After giving proper deference to the factfinder's role, we will uphold the verdict unless a rational factfinder must have had reasonable doubt as to any essential element." *Laster v. State*, 275 S.W.3d 512, 518 (Tex. Crim. App. 2009).

A person commits the offense of driving while intoxicated "if the person is intoxicated while operating a motor vehicle in a public place." Tex. Penal Code Ann. § 49.04(a) (West Supp. 2016). The term "operating," as used in section 49.04(a) of the Penal Code, is not defined. *See id.* § 49.01 (West 2011); § 49.04; *Kirsch v. State*, 357 S.W.3d 645, 650 (Tex. Crim. App. 2012). However, the Court of Criminal Appeals has instructed that, for purposes of reviewing the sufficiency of the evidence for a DWI conviction, a defendant "operates" a vehicle when the totality of the circumstances demonstrates that the defendant took action to affect the functioning of the vehicle in a manner that would enable the vehicle's use.

13

*Denton v. State*, 911 S.W.2d 388, 390 (Tex. Crim. App. 1995). Whether a person was operating a motor vehicle is a question of fact for the factfinder. *Kirsch*, 357 S.W.3d at 652.

The Penal Code defines "intoxicated" as "not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body[.]" Tex. Penal Code Ann. § 49.01(2)(A). The State is not required to establish the exact time that the defendant was operating the vehicle to prove that she was driving while intoxicated. *See Kuciemba v. State*, 310 S.W.3d 460, 462-63 (Tex. Crim. App. 2010); *Weems v. State*, 328 S.W.3d 172, 177 (Tex. App.—Eastland 2010, no pet.). The State, however, must show a "temporal link" between the defendant's intoxication and her operation of a motor vehicle—in other words, there must be proof from which the factfinder can conclude that, at the time of the driving in question, the defendant was intoxicated. *Kuciemba*, 310 S.W.3d at 462; *McCann v. State*, 433 S.W.3d 642, 649 (Tex. App.—Houston [1st Dist.] 2014, no pet.). Such a finding can be supported solely by circumstantial evidence. *Kuciemba*, 310 S.W.3d at 462.

## A.      Corroboration of Paciga's Extrajudicial Statements

We first address Paciga's argument that her extrajudicial admissions "fail[]

to establish the *corpus delicti* to support a DWI conviction." We interpret Paciga's

argument as asserting that the State failed to corroborate her extrajudicial

admissions to law enforcement officers on the night of her arrest and that her

admissions cannot therefore be used in establishing the *corpus delicti* of the

offense.

Under the *corpus delicti* doctrine, a defendant's extrajudicial confession

does not constitute legally sufficient evidence of guilt unless the confession is

corroborated by independent evidence tending to establish the *corpus delicti* of the

offense. *Miller v. State*, 457 S.W.3d 919, 924 (Tex. Crim. App. 2015); *Fisher v.

State*, 851 S.W.2d 298, 302 (Tex. Crim. App. 1993). To satisfy this rule, there must

be "evidence independent of a defendant's extrajudicial confession show[ing] that

the 'essential nature' of the charged crime was committed by someone." *Hacker v.

State*, 389 S.W.3d 860, 866 (Tex. Crim. App. 2013). The other evidence need not

be sufficient by itself to prove the offense; rather, "'all that is required is that there

be some evidence which renders the commission of the offense more probable than

it would be without the evidence.'" *Rocha v. State*, 16 S.W.3d 1, 4 (Tex. Crim.

App. 2000) (quoting *Williams v. State*, 958 S.W.2d 186, 190 (Tex. Crim. App.

15

1997)). The rule is satisfied "if some evidence exists outside of the [extrajudicial] confession which, considered alone or in connection with the confession, shows that the crime actually occurred." *Salazar v. State*, 86 S.W.3d 640, 645 (Tex. Crim. App. 2002); *see also Turner v. State*, 877 S.W.2d 513, 515 (Tex. App.—Fort Worth 1994, no pet.) ("If there is some evidence corroborating the admission, the admission may be used to aid in the establishment of the [*corpus delicti*].").

The *corpus delicti* of any offense consists of the fact that the offense in question has been committed by someone. *Fisher*, 851 S.W.2d at 303. The perpetrator's identity is not part of the *corpus delicti* and need not be corroborated by independent evidence. *Chambers v. State*, 866 S.W.2d 9, 15 (Tex. Crim. App. 1993); *Gribble v. State*, 808 S.W.2d 65, 70 (Tex. Crim. App. 1990). The *corpus delicti* of driving while intoxicated is that someone (1) operated a motor vehicle (2) in a public place (3) while intoxicated. *See* Tex. Penal Code Ann. § 49.04(a); *Layland v. State*, 144 S.W.3d 647, 651 (Tex. App.—Beaumont 2004, no pet.).

In the present case, the State presented evidence that at the scene Paciga stated that she had just left Club Heat and was heading home to her residence in Groves, Texas. This extrajudicial admission, to the extent it goes to show the

16

operation of a motor vehicle or that the accident had recently occurred,[2] is corroborated by the testimony of both officers at trial. Specifically, the first responding officer testified that he was dispatched to the intersection of Seventh Street and the I-10 service road in response to a report of a "suspicious vehicle" at approximately 11:00 p.m. He arrived at the scene within seventeen minutes or less. At the scene, he found a blue Toyota Corolla that had left the service road and had come to rest in a grassy area next to a chain link fence. According to the first officer, the Toyota was located only a few feet from the fence, and a portion of the fence appeared to have "just been knocked over." The second officer, who arrived at the scene shortly after the first officer, described the Toyota as "sitting on a portion of the chain link fence it had crashed through." The crash site was on the same service road and less than one mile away from Club Heat. Both officers testified without objection that, in their opinion, the Toyota would have had to have traveled down the service road or the highway to make contact with the fence.

---

[2] We recognize that the time the accident occurred is not an element of driving while intoxicated and is thus not part of the *corpus delicti* of the offense. *See* Tex. Penal Code Ann. § 49.04(a) (West Supp. 2016); *Kuciemba v. State*, 310 S.W.3d 460, 462-63 (Tex. Crim. App. 2010); *Zavala v. State*, 89 S.W.3d 134, 139 (Tex. App.—Corpus Christi 2002, no pet.). However, evidence of when the accident occurred, to the extent it exists, is nevertheless relevant in showing that the driver was intoxicated at the time he or she operated the vehicle, which is an element of the offense and part of the *corpus delicti*. *Kuciemba*, 310 S.W.3d at 462; *Zavala*, 89 S.W.3d at 139; *Layland v. State*, 144 S.W.3d 647, 651 (Tex. App.—Beaumont 2004, no pet.).

Both officers found Paciga sitting on the ground next to the Toyota with car keys in her hand. Although neither officer personally checked to see if the keys started the Toyota, the second officer testified that the tow truck driver who arrived at the scene did. No one else was in the vicinity of the accident except for a railroad worker who had initially reported the accident.

We conclude that this evidence tends to make it more probable that the Toyota was operated and that the accident had occurred recently than Paciga's extrajudicial statement alone; therefore, it sufficiently corroborates Paciga's statement. *See Rocha*, 16 S.W.3d at 4; *see also Lara v. State*, 487 S.W.3d 244, 249 (Tex. App.—El Paso 2015, pet. ref'd) (concluding that the defendant's extrajudicial admission that he was driving when his tire blew out was sufficiently corroborated by other evidence showing the operation of a motor vehicle where there was evidence that the vehicle in question was later found by police with a damaged tire in the location where the defendant said he had left it and the defendant had car keys in his pocket); *Farmer v. State*, No. 2-06-113-CR, 2006 WL 3844169, *1, 4 (Tex. App.—Fort Worth Apr. 25, 2007, pet. ref'd) (mem. op., not designated for publication) (concluding that defendant's extrajudicial admission that she was "coming from Denton and was on her way home to Van Alstyne" was sufficiently corroborated by other evidence showing the operation of

18

a motor vehicle where there was evidence that the defendant was found next to the vehicle approximately ten miles outside of Denton, the vehicle had a flat tire and was in the middle of the interstate service road, the vehicle's hazard lights were flashing and the keys were in the ignition, and no one besides the defendant approached the vehicle). Accordingly, Paciga's extrajudicial statement may be used in establishing the *corpus delicti* in this case. *See Turner*, 877 S.W.2d at 515.

## B.    Sufficiency Analysis

We next consider Paciga's argument that the evidence is insufficient to prove beyond a reasonable doubt that (1) she operated a motor vehicle, and (2) she was intoxicated at the time she operated the motor vehicle.

Considering Paciga's statement at the scene that she had just left Club Heat and was heading home to her residence in Groves, together with the independent evidence of operation of a motor vehicle that corroborates this statement as set forth above, we conclude that the evidence is legally sufficient to show the operation of a motor vehicle in this case. *See Jackson*, 443 U.S. at 319; *Temple*, 390 S.W.3d at 360; *Kirsch*, 357 S.W.3d at 652.

Further, we conclude that there is legally sufficient evidence to prove that Paciga was the person who was operating the Toyota at the time of the accident. As noted, the evidence shows that the first responding officer arrived at the scene

19

within seventeen minutes of receiving the dispatch. At the scene, the first officer found a Toyota Corolla that had left the roadway and had come to rest next to a chain link fence. A portion of the fence appeared to have just been knocked over. Both officers testified that the Toyota would have had to have traveled down the service road or the highway to make contact with the fence. At the scene, Paciga was sitting next to the Toyota with car keys in her hand, and there is some evidence that a tow truck driver who came to the scene checked that those keys started the Toyota. No one else was in the vicinity of the accident except for the railroad worker who had initially called the police, and no one else came to the scene at any point to claim the Toyota. While at the scene, Paciga stated that she had just left Club Heat and was heading home to her residence in Groves, Texas. Furthermore, Paciga referred to the Toyota as her "sister's car" and expressed concern over paying the costs associated with towing the Toyota from the scene. The first officer also checked the registration for the Toyota and although Paciga's name was not listed on the registration, he discovered that the vehicle was registered to the same address listed on Paciga's expired driver's license. Viewing the evidence in the light most favorable to the verdict, we conclude that a rational factfinder could have found beyond a reasonable doubt that Paciga was the driver

of the Toyota and that she was operating a motor vehicle when the accident occurred. *See Jackson*, 443 U.S. at 319; *Temple*, 390 S.W.3d at 360.

We also reject Paciga's argument that the evidence is insufficient to show that she was intoxicated at the time she drove. As noted, the State is not required to present evidence of the exact time that the defendant drove, and the temporal link between a defendant's intoxication and the time of her driving can be established solely by circumstantial evidence. *See Kuciemba*, 310 S.W.3d at 462. Here, the evidence shows that the first responding officer arrived at the intersection of Seventh Street and the I-10 service road within seventeen minutes of receiving a report concerning a "suspicious vehicle" at that location. At the scene, the first officer observed Paciga sitting next to the Toyota, which had been involved in a one-car collision with a chain link fence. According to that officer, the fence appeared to have "just been knocked over[,]" and Paciga told him at the scene that she had "just" left Club Heat and was heading home to her residence in Groves, Texas. From this evidence, a rational factfinder could reasonably infer that Paciga was involved in a one-vehicle accident shortly before the first officer arrived at the scene.

The record contains testimony from two officers that Paciga exhibited signs of intoxication when they each spoke with her at the scene. They testified that

21

Paciga had slurred speech, was unsteady on her feet, had red, glassy eyes, and had an odor of alcohol emitting from her breath and person. The second officer also testified that Paciga had a slow reaction time when answering questions and performing tasks, and was unable to answer simple questions or follow basic instructions. After observing these signs, the second officer administered three standardized field sobriety tests to Paciga. Paciga exhibited multiple clues of intoxication in response to each test. Based on the results of the field sobriety tests, the second officer concluded that Paciga "had lost the normal use of her mental and physical faculties" due to intoxication from the consumption of alcohol. There is no evidence that there were any alcoholic beverages or beverage containers in the Toyota or in the vicinity of the accident, or any other evidence tending to suggest that Paciga drank to intoxication between the time of the accident and the time officers arrived at the scene.

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational factfinder could have concluded that Paciga was intoxicated at the time she was driving and that her intoxication caused the Toyota's collision with the chain link fence. *See Jackson*, 443 U.S. at 319; *Kuciemba*, 310 S.W.3d at 462 ("Being intoxicated at the scene of a traffic accident in which the actor was a driver is some circumstantial evidence that the actor's intoxication caused the accident,

and the inference of causation is even stronger when the accident is a one-car collision with an inanimate object."); *Scillitani v. State*, 343 S.W.3d 914, 916-20 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) (concluding that there was sufficient evidence that the defendant was intoxicated at the time he drove where the evidence showed that the defendant was found at the scene of an accident, the accident involved a one-car collision with a fence pole, there were no skid marks on the road, the defendant admitted to driving the vehicle, the defendant exhibited multiple clues of intoxication in response to field sobriety tests administered at the scene, and the defendant's breath samples showed a blood alcohol level above the legal limit; the court reached this conclusion despite the fact that the defendant was not found in the vehicle at the scene, there was no evidence as to whether the engine of the vehicle was still warm or running when the officer arrived, and there was no evidence as to whether any alcoholic beverages or containers were found in the vehicle or at the scene). We overrule Paciga's sole issue and affirm the judgment of the trial court.

AFFIRMED.

_____
CHARLES KREGER
Justice

23

Submitted on July 27, 2015
Opinion Delivered November 2, 2016
Do not publish

Before McKeithen, C.J., Kreger and Johnson, JJ.