

# IN THE COURT OF CRIMINAL APPEALS
## OF TEXAS

---

### NO. PD-1615-14

---

**WILLIAM SMITH, Appellant**

**v.**

**THE STATE OF TEXAS**

---

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE THIRTEENTH COURT OF APPEALS
### NUECES COUNTY

---

KELLER, P.J., announced the judgment of the Court and delivered an opinion in which KEASLER, HERVEY and YEARY, JJ., joined. RICHARDSON, J., filed a dissenting opinion in which MEYERS, JOHNSON and ALCALA, JJ., joined. NEWELL, J., concurred.

Appellant was convicted of driving while intoxicated. His conviction was based in part upon evidence obtained as a result of a warrantless mandatory blood draw conducted pursuant to Chapter 724 of the Health and Safety Code.[1] The court of appeals reversed appellant's conviction on the basis that drawing appellant's blood without a warrant violated the Fourth Amendment. In its petition for discretionary review, the State contends, *inter alia*, that appellant failed to preserve error

---

[1] *See* TEX. HEALTH & SAFETY CODE § 724.012(b).

with respect to this Fourth Amendment complaint. We agree, because appellant never obtained a ruling on this complaint. Consequently, we reverse the judgment of the court of appeals.

## I. BACKGROUND

### A. The Stop

State Trooper David Anguiano stopped appellant for driving without wearing a seatbelt. After the stop was initiated, Trooper Anguiano smelled an "extremely strong smell of alcohol" coming from appellant. Appellant's movement was slightly delayed, and his eyes were a little glassy and bloodshot. Suspecting intoxication, the trooper conducted various tests. On the horizontal-gaze-nystagmus test, appellant exhibited all six possible clues of intoxication. On the walk-and-turn test, appellant exhibited two clues of intoxication.[2] Appellant also exhibited clues of intoxication on the one-leg-stand test by swaying slightly and raising his arms for balance. He performed satisfactorily on reciting the alphabet but "was kind of slow or kind of struggling with it." On the finger touch-and-count test, appellant seemed to fumble with his fingers at one point, and he performed four cycles of the test instead of the three he was told to perform.

After these tests, appellant was arrested. He insisted that he was not intoxicated, and Trooper Anguiano offered to allow him to take a breath test. At first, appellant appeared inclined to take that test, but after talking to the passenger in his vehicle, he refused to do so. After being placed in the patrol car, appellant became belligerent, kicking his feet and "cussing." In appellant's car, the trooper found at least three open containers of alcoholic beverages that were cold to the touch. The entire stop was captured on video.

### B. Blood Draw

---

[2] Appellant missed heel to toe on a few steps, and he turned the wrong way.

Upon discovering that appellant had two prior convictions for driving while intoxicated, Trooper Anguiano determined that appellant would be taken to a hospital for a blood draw.[3] Because appellant was uncooperative when the trooper tried to transport him in a patrol unit, Trooper Anguiano ordered a "caged unit" to transport appellant. Appellant's blood was drawn at the hospital, and the analysis of the blood sample revealed that he had a blood-alcohol concentration of .21 grams of alcohol per 100 milliliters of blood.

## C. Trial

Appellant's guilt was determined in a bench trial. The blood sample was part of State's Exhibit 2, which forensic scientist Emily Bonvino referred to as "a blood box, blood tube mailer box that has a blood tube in it." Bonvino testified about how blood samples are analyzed, and she said that she analyzed the blood sample in question. At some point during this discussion, defense counsel said, "I'm going to object to testifying about this vial. It's not in evidence, Your Honor." The State then stated that it was "[s]etting the predicate to introduce it into evidence." Defense counsel then stated, "We're going to go ahead and – well, we'll wait until it's admitted, I guess, to object." The trial judge responded, "Okay."

The prosecutor then asked some questions regarding the vial and its packaging, along with questions about the blood-test machine. After that, the prosecutor asked Bonvino what the test results were. Without objection, Bonvino testified that the analysis showed .21 grams of alcohol per 100 milliliters of blood. Bonvino also testified, without objection, that the blood vial taken from appellant contained above .08 percent alcohol, from which she concluded that appellant was "more than likely above a .08" at the time of the offense.

---

[3] *See id.* § 724.012(b).

The prosecutor then sought to introduce State's Exhibit 2 into evidence. At that point, defense counsel objected on various grounds, including that "[t]here's no order for a mandatory blood draw that we know of that's in evidence." Defense counsel further stated, "[Y]ou don't need a court order from a judge, but you would need an order from the officer, and we don't have the order from the officer in evidence."

The prosecutor responded that he did not think an order was required. The trial judge then quoted from § 724.012, and the parties and the judge discussed the language. Defense counsel then said, "I would submit my objection, Your Honor, on constitutional grounds, and that it should be inferred from the statute that there should be a written order." The trial judge then asked, "You're making a constitutional challenge?" Defense counsel responded affirmatively and added that the defendant "is deserving of a right to due process of law" including "substantive, procedural and, in fact, that – and in fact, that there is no order signed –" The trial judge interjected, "By a magistrate or a judge." Defense counsel responded, "[B]y a magistrate, and there's – and additional, no order signed by even the police officer." The trial judge then stated that "the police officer doesn't have any authority to sign an order, but a magistrate or a judge brings up an interesting issue." The prosecutor responded that the police officer was operating under the laws of the State, but the trial judge responded, "No . . . the legislature allows for this . . . but that doesn't mean that the law is constitutional." The prosecutor agreed with that observation, and the trial judge continued, "So you're making, I guess, a Fourth Amendment search and seizure . . . constitutional challenge."

Defense counsel responded, "Yes, Your Honor, I am" and stated that the particular case was egregious. He continued, "There's nothing in the evidence that shows that he didn't have the time to get an order from the – from a judge or a magistrate." The trial judge observed that the officer

followed the statute, so "[t]he only question is whether 724.012 is constitutional, whether it passes the muster of the Federal Constitution." Defense counsel responded that his "brief research did not indicate that it had ever been brought up." The trial judge then stated, "Okay. Well, I'll carry that. I'll carry that because I think that's an interesting issue."

After eliciting further testimony about the procedures surrounding the analysis of the sample, the prosecutor again elicited, without objection, testimony that the analysis showed a blood-alcohol-concentration of .21. The prosecutor then moved, for a second time, to admit State's Exhibit 2 into evidence. Defense counsel reprised several of his objections, including "the constitutional issue regarding the – no order for the blood draw." After rejecting some of appellant's non-constitutional objections, the trial judge stated, "In terms of the constitutional issue, I'll reserve that – that issue, but it's admitted at this time." Defense counsel then asked, "Regarding that issue, will we have an opportunity to brief that issue?" The trial judge responded, "You will." After discussing the probability that cases have been decided that are relevant to the issue, the trial judge stated, "All right. And I guess State's Exhibit No. 2 is admitted into evidence."

After the close of the evidence, defense counsel moved for an instructed verdict. He gave numerous reasons why he thought his client was entitled to one. In the midst of these reasons was the statement that "the Defendant's blood was illegally seized without Court order and/or written order in violation of due process, his Constitutional right of due process in particular." The trial judge denied the motion.

After closing arguments, the trial judge found appellant guilty. The trial judge stated that the video of appellant showed "some signs of intoxication," but the judge was surprised when he heard the blood-test results that appellant "did anywhere near as well as he did on the video." Given the

video, the judge said, it "was kind of a close call" whether appellant had lost the normal use of his mental or physical faculties beyond a reasonable doubt, but the .21 result was far in excess of the .08 standard set by the legislature.[4]

The trial judge then stated that defense counsel had "raised an interesting constitutional question about the fact that the blood draw was taken without a warrant." The trial judge further stated, "I'm not sure if this has been litigated or not, but I'm – I'm not certain that the legislature can – can do this or not. I mean, the Fourth Amendment is still the law of the land and regardless of what the State legislatures or even Congress does, but you're going to have to do me some research, [defense counsel], and show me." Defense counsel responded that he was sorry that he did not do any research the night before. The trial court replied, "No, I mean, we're not done with the trial, and I'll consider it certainly." Defense counsel then stated that the "Texas Court of Criminal Appeals looks like they kind of said it was okay, but they didn't rule directly it looked like on the constitutional issues. That's what my research indicated." The trial judge responded, "Well, you're going to have to brief me on the issue if you want me to consider it. I need to know what the Courts have said and how far it's gone up."

Nothing in the record suggests that the constitutional issue was ever mentioned at the trial level again. The trial judge sentenced appellant to twenty-five years in prison, the minimum punishment due to the existence of prior felony convictions used for enhancement purposes.[5]

---

[4] The law provides two different methods of proving intoxication in a driving while intoxicated case: (1) "not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body" or (2) "having an alcohol concentration of 0.08 or more." TEX. PENAL CODE § 49.01(2).

[5] *See* TEX. PENAL CODE § 12.42(d).

## D. Appeal

On appeal, appellant complained that the trial court erred in admitting the blood sample because the blood was drawn without a warrant in violation of the Fourth Amendment. The court of appeals addressed the issue of error preservation in two sentences in its opinion. First, the court of appeals stated, "Over appellant's objection on constitutional grounds, the trial court admitted the blood evidence."[6] In a footnote to that sentence, the court of appeals said, "Appellant did not file a motion to suppress the blood evidence, but rather objected on the basis of a violation of the Fourth Amendment prior to the admission of the results of the blood analysis."[7] The court of appeals addressed the merits of appellant's Fourth Amendment complaint, and it concluded that the evidence was inadmissible.[8] After a brief harm analysis, the court of appeals concluded that the error was harmful.[9] Consequently, the court of appeals reversed appellant's conviction and remanded the case to the trial court for further proceedings.[10]

## E. Discretionary Review

The State claims that appellant failed to preserve error because he failed to object to testimony about the blood-test results. Alternatively, the State claims that appellant failed to preserve error because he failed to secure a final ruling until after the close of the evidence.

---

[6] *Smith v. State*, ___ S.W.3d ___, ___, 2014 Tex. App. LEXIS 12372, *4 (Tex. App.–Corpus Christi-Edinburg November 13, 2014).

[7] *Id.* at *4 n.5.

[8] *Id.* at *4-19

[9] *Id.* at *19-21.

[10] *Id.* at *21.

Appellant contends that, because the trial was a *bench* trial, "the time at which a motion is re-urged or a ruling is obtained is not as crucial, because the judge, as fact-finder, is aware of the substance of the motion regardless of when the defendant finally argues it."[11]

## II. ANALYSIS

To preserve error, a party must, among other things, obtain a ruling on the complaint or object to the trial judge's refusal to rule.[12]  In the present case, the trial judge declined to rule on the Fourth Amendment issue at the time the evidence was admitted but "carried" the issue through the trial.[13]  Although the trial judge admitted the evidence, that admission, unaccompanied by a ruling on appellant's complaint, was not sufficient to preserve error.[14]

Both parties seem to agree that a ruling on appellant's Fourth Amendment complaint was obtained after the close of the evidence, but we disagree.  The ruling that was made after the close of the evidence was on appellant's motion for instructed verdict.  A ruling on a motion for instructed

---

[11]  *See Garza v. State*, 126 S.W.3d 79, 83 (Tex. Crim. App. 2004).

[12]  TEX. R. APP. P. 33.1(a)(2) ("As a prerequisite to presenting a complaint for appellate review, the record must show that . . . the trial court: (A) ruled on the request, objection, or motion, either expressly or implicitly; or (B) refused to rule on the request, objection, or motion, and the complaining party objected to the refusal.").

[13]  *See Garza*, 126 S.W.3d at 84 (trial judge did not rule on pre-trial motion to suppress at the time, when he directed it to be carried with trial).

[14]  *Darty v. State*, 709 S.W.2d 652, 653-55 (Tex. Crim. App. 1986) ("The issue before us is whether the admission of evidence by the trial court over objection implies that the objection is overruled, and error is preserved, when no precise ruling by the trial court appears in the record. We hold that absent an adverse ruling that appears of record, such an admission of evidence does not preserve error.").

verdict is not the same as a ruling on the admission of evidence.[15] A motion for instructed verdict is essentially a trial level challenge to the sufficiency of the evidence.[16] Even evidence that is improperly admitted is considered in determining whether the evidence is sufficient to support a conviction,[17] and in any event, there was other evidence to support appellant's conviction aside from the blood-test results. Moreover, after finding appellant guilty, the trial judge reiterated that the Fourth Amendment issue had not been resolved. Appellant never asked for a ruling on the issue, nor did he object to the trial judge's failure to rule. Because he failed to obtain a ruling on the Fourth Amendment complaint, he failed to preserve error with respect to that complaint.

Moreover, appellant failed to object when Bonvino testified on three occasions about the results of the blood test. Even if appellant had obtained a ruling on his objection to the blood vial itself, the test results were already in evidence. It is well settled that the erroneous admission of

---

[15] *See Moff v. State*, 131 S.W.3d 485, 489-90 (Tex. Crim. App. 2004) ("Sometimes a claim of trial court evidentiary error and a claim of insufficient evidence overlap so much that it is hard to separate them. For example, suppose that the identity of a bank robber is proven through the testimony of one and only one witness at trial. Suppose further that this witness' testimony is rank hearsay: 'Little Nell told me that Simon was the bank robber.' On appeal a defendant might raise a hearsay claim and a claim of sufficiency of the evidence to prove identity. He will have the right to have the hearsay question considered on its merits only if he objected properly at trial; he will have the right to have the question of the sufficiency of evidence to prove identity considered on its merits whether or not he objected. . . . Both litigants and reviewing courts should be careful to distinguish claims of improperly admitted evidence (trial error) from legal insufficiency of all admitted evidence—even improperly admitted evidence."); *id.* at 492 & n.30 ("Appellant, like those before him, improperly sought to have his evidentiary question incorporated into his sufficiency question. . . . Appellant did not bring an independent point of error in the court of appeals disputing the admissibility [of certain evidence].").

[16] *See Williams v. State*, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996) ("We treat a point of error complaining about a trial court's failure to grant a motion for directed verdict as a challenge to the legal sufficiency of the evidence."); *Lucio v. State*, 351 S.W.3d 878, 905 (Tex. Crim. App. 2011) (citing *Williams*).

[17] *Soliz v. State*, 432 S.W.3d 895, 900 (Tex. Crim. App. 2014).

testimony is not cause for reversal "if the same fact is proven by other testimony not objected to."[18]

We reverse the judgment of the court of appeals and remand the case to the court of appeals to consider appellant's remaining points of error.

Delivered: June 8, 2016
Publish

---

[18] *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998) (citing *Wagner v. State*, 109 S.W. 169 (Tex. Crim. App. 1908)).