

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-15-00226-CR

KENNY WAYNE DAVLIN, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 4th District Court
Rusk County, Texas
Trial Court No. CR14-319

Before Morriss, C.J., Moseley and Burgess, JJ.
Opinion by Justice Moseley

# O P I N I O N

Kenny Wayne Davlin entered a plea of guilty to the charge of aggravated assault against a public servant and asked a jury to assess his punishment. The jury assessed Davlin's punishment at ten years' confinement with the Texas Department of Criminal Justice Correctional Institutions Division. Davlin has appealed, raising two points of error.

In his first point of error, Davlin complains that the trial court abused its discretion by allowing evidence that he had used a racial slur and that the admission of this evidence violated his due process rights under the United States Constitution and the "equality under the law" provision of the Texas Constitution. In his second point, he complains that the trial court erred in allowing the admission of testimony by third parties regarding statements made by Davlin's wife, Sarah. On appeal, Davlin claims that this constituted violations of his right to confront a witness against him as guaranteed by the Sixth Amendment to the United States Constitution, the parallel provisions of the Texas Constitution, and Article 1.05 of the Texas Code of Criminal Procedure.

## I.      Facts of the Case

The historical background giving rise to the charges against Davlin begins with a house fire on Peach Street in Kilgore, Rusk County, in the early morning hours. As firemen battled the blaze, Davlin and his wife (who lived in a house which was catty-cornered from the conflagration) came outside to view the spectacle of the burning house and the procedures taken by the firefighters to combat the fire. Davlin, who appeared to be very intoxicated, remarked to one of the firefighters that although the house was then unoccupied, it had last been rented by "niggers" who were messy and thereby demeaned the neighborhood. Davlin expressed that he was not displeased with the

2

fact that the house was afire. He also mentioned that he was upset with the situation that was then occurring in Ferguson, Missouri, where demonstrations by blacks were occurring on a regular basis.

Davlin returned to his property, where he and Sarah engaged in a struggle over a pistol which Davlin had tucked into his beltline. The wife was able to remove the gun from Davlin and hid it in their home. Davlin then burst into his home and engaged in an apparent physical dispute with Sarah. Sarah ran from the house with her young son in her arms, exclaiming that Davlin intended to kill everyone, followed by Davlin bearing an assault rifle.

The remaining firefighters took cover and called for police backup. The fire marshal, Brandon Bigos, who in addition to being a firefighter, was also a certified peace officer, had already exited the scene, but returned there when he heard the radio alert that police were needed on site. Upon Bigos' return, he saw Davlin aim his assault rifle at firefighters and at that time, Bigos shot Davlin.

After Davlin was loaded into an ambulance to be taken to a hospital for treatment of the bullet wound he sustained, a firefighter overheard Sarah talking on the telephone with an unknown person. In that conversation, Sarah related much of what occurred during the standoff. The firefighter was allowed to testify (over Davlin's strenuous objections) as to the content of that telephone conversation.

Davlin was charged with aggravated assault against a public servant, a first degree felony, TEX. PENAL CODE ANN. § 22.02(b)(2)(B) (West 2011), which is punishable by incarceration of a

3

term between five and ninety-nine years and the possibility of a fine not to exceed $10,000.00. TEX. PENAL CODE ANN. § 12.32 (West 2011).

**II.     Motions to Suppress and Motions in Limine**

Well before trial, Davlin filed stock, off-the-shelf motions to suppress evidence and motions in limine that were general in nature, these being among some fourteen motions filed by him at that time.  He also later filed more specific motions in limine, one of which pertained to the recitation of the racial slur which Davlin had uttered just prior to the incident for which he was charged.

In the hearing on the motion to suppress, the parties agreed to most of the matters set forth in the motion to suppress and then treated the motion in limine regarding the racial slur as if it were included among the matters sought to be suppressed.

A motion in limine is only "a preliminary matter and normally preserves nothing for appellate review. For error to be preserved with regard to the subject of a motion in limine, an objection must be made at the time the subject is raised during trial." *Fuller v. State*, 253 S.W.3d 220, 232 (Tex. Crim. App. 2008).

Irrespective of the means by which Davlin attempted to exclude the evidence that his client had used a racially-charged word, all of the participants in the hearing treated Davlin's attempt as a motion to exclude, not as a motion in limine.  The trial court, after hearing the argument of counsel, announced that it denied Davlin's motion.  Davlin requested that he be granted a running objection to argument and evidence about such matter entirely through the trial, and the trial court responded by saying, "I'll adopt your objections as set forth in your motions and give you a running

4

objection as per those motions." At the commencement of the punishment hearing, the following exchange between Davlin and the trial court occurred:

> THE COURT: The Court will give you the same running objection, and the Court will continue -- the prior rulings of the Court are hereby adopted for these proceedings, and I'll give you a running objection on all matters heretofore ruled upon.
>
> [DAVLIN]: Same thing on the racial slurs. We would reurge that.
>
> THE COURT: Yes, same ruling.

The statements of the trial court are important in two respects. First, they showed that the trial court made a final ruling on Davlin's objections to the introduction of evidence regarding the racial slur that he had made. Second, they affirmatively reiterated that the objections raised by Davlin to the statement were based solely upon the relevancy of the statement and the potential prejudicial effect that its revelation could have on the jury (these being the sole reasons for exclusion mentioned in Davlin's motion in limine and also the same ones argued by him at the suppression hearing).

Because the trial court presented an unqualified adverse ruling regarding Davlin's objection to introduction of the evidence that he uttered the racial slur, that ruling served in the same function as a motion to exclude, despite the fact that the objection was first voiced in terms of a motion in limine. *See Geuder v. State*, 115 S.W.3d 11, 15 (Tex. Crim. App. 2003).

Accordingly, as pertaining to Davlin's point of error concerning the introduction of evidence of the utterance of the racial slur, Davlin's arguments at the trial level dealt with his claim that the statement was irrelevant to the issues at bar and that its prejudicial value outweighed its probative value. *See* TEX. R. EVID. 403. On appeal, Davlin raises neither of those points in his

5

claimed point of error. Instead, Davlin now asserts that this evidence violated his due process rights under the United States Constitution and the equality under the law provision of the Texas Constitution.

To preserve error for appellate review, the Texas Rules of Appellate Procedure require that the record show that the objection "stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." TEX. R. APP. P. 33.1(a)(1)(A). The point of error on appeal must comport with the objection made at trial. *Thomas v. State*, 723 S.W.2d 696, 700 (Tex. Crim. App. 1986). Therefore, if a party fails to properly object to constitutional errors at trial, these errors can be forfeited. *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012); *Briggs v. State*, 789 S.W.2d 918, 924 (Tex. Crim. App. 1990).

Because Davlin's objections to the rulings on appeal do not comport with those raised by him at trial, we determine that Davlin has forfeited his right to complain of those rulings.

Davlin's first point of error is denied.

## III. Objection to Testimony Concerning Content of Sarah Davlin's Telephone Conversation

In his second point of error, Davlin complains of the ruling of the trial court which allowed Richard Crumpton, a firefighter with the Kilgore Fire Department, to testify concerning the statements made by Sarah about the events of the night. These statements were made by Sarah in a cell phone conversation with some unknown person to whom she was then excitedly and tearfully speaking.

6

The gist of Crumpton's testimony about which Davlin complained is as follows:

> I overheard the lady [Sarah] saying that he [Davlin] had a gun, "I took a gun away from him," and she had locked the door. And she locked herself inside the house pretty much, hid the gun. And she thought he had gone, thought that -- now I know his name, Davlin -- had left. She thought he was gone and opened the door again, and that's when he came back inside and got another gun, and that's when she pretty much ran back out of the house and was scared for her life.

With the jury removed from the courtroom, Davlin objected:

> Judge, we would object to that as being hearsay, first. We would also object that it is a violation of the confrontation clause under the United States Constitution and the Texas Constitution and amendments thereto. We also are objecting under *Crawford* and also under *Washington v. State*, a Texas case, that those were clearly, when they're after the event like that and somebody's recounting what happened, something that happened, that those should be borne by the confrontation clause.

It was firmly established that even though the emergency of the armed confrontation was over and Davlin had been removed from the scene, Sarah was still "scared, like shaking scared" when her end of the telephone conversation with the unknown person was overheard. Without explaining the basis for the ruling, the trial court overruled Davlin's objection and allowed the testimony.

In most circumstances, we review a trial court's ruling regarding the admissibility of evidence under an abuse of discretion standard. *Blasdell v. State*, 384 S.W.3d 824, 829 (Tex. Crim. App. 2012). Under this standard, a reviewing court may not reverse the trial court's ruling unless it falls outside the zone of reasonable disagreement. *Id.* Under that standard, we will uphold the trial court's decision if it is supported by the record and is correct under any theory of applicable law. *Martin v. State*, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005). However, we review Confrontation Clause claims de novo. *Wall v. State*, 184 S.W.3d 730, 743 (Tex. Crim. App. 2006).

7

An excited utterance is "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." TEX. R. EVID. 803(2). Such excited utterances are not subject to the hearsay rule, irrespective of whether the declarant is available as a witness. TEX. R. EVID. 803. However, just because a statement is not disqualified under the Texas Rules of Evidence, that does not necessarily mean that it will withstand Constitutional scrutiny. *See Wall*, 184 S.W.3d 730. The United States Constitution's Confrontation Clause generally bars the admission of out-of-court testimonial statements of a witness unless the witness is unavailable to testify and the defendant had a prior opportunity to cross-examine the witness. *Crawford v. Washington*, 541 U.S. 36, 53 (2004); *Wells v. State*, 241 S.W.3d 172, 174–75 (Tex. App.—Eastland 2007, pet. ref'd). Unfortunately, *Crawford* fails to specify what it means by "testimonial statement."

> Helpful to our analysis is the following, from the United States Supreme Court:

> Statements are non[-]testimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Davis v. Washington*, 547 U.S. 813, 822 (2006). In *Davis*, the statements at issue were from a 9-1-1 call. The declarant caller "was alone, not only unprotected by police . . . but apparently in immediate danger from Davis. She was seeking aid, not telling a story about the past. [Her] present-tense statements showed immediacy" and thus were non-testimonial. *See id.* at 831. A different result obtained in *Davis'* companion case, *Hammon v. Indiana*, 547 U.S. 813 (2006). There, the victim's "narrative of past events . . . delivered at some remove in time from the danger

8

she described" "[was] neither a cry for help nor the provision of information enabling officers immediately to end a threatening situation, [and] the fact that [the narrative was] given at an alleged crime scene and [was an] 'initial inquir[y]' is immaterial." *Davis*, 547 U.S. at 832. *Hammon*'s statements were determined to have been testimonial in nature.

Some difficulty lies in distinguishing between the admissibility of a statement under the excited-utterance hearsay exception when contrasted with the standard of review under the Confrontation Clause.

> In part, the distinctive standards of review for hearsay objections and Confrontation Clause objections to the admission of excited utterances arise because the hearsay exception depends largely upon the subjective state of mind of the declarant at the time of the statement, whereas the issue of whether an out-of-court statement (excited or otherwise) is "testimonial" under *Crawford* depends upon the perceptions of an objectively reasonable declarant.

*Wall*, 184 S.W.3d at 743.

Many of the cases involving Confrontation Clause challenges arise after police have questioned people who have been involved as victims of or participants in an accident, and the statements were made by the declarants in response to an interrogation of some sort. That is not the case here. The testimony here is the relation of the content of an impromptu conversation of another which was overheard by the witness. If a factor in determining whether a statement was "testimonial" depends on the objectively reasonable declarant determining that the purpose of the statement was to provide evidence at a later time, that simply does not fit this circumstance.

Here, although the exigency and its attendant dangers had passed, Sarah was still operating under its influence when she engaged in the telephone conversation. But those circumstances are not necessarily part of our consideration of whether Sarah reasonably thought her telephone

conversation had as its "primary purpose" "to establish or prove past events potentially relevant to later criminal prosecution." *Davis*, 547 U.S. at 822. Her statements were being made to a person other than someone associated with law enforcement and, thus, could hardly have been said by her with the idea that they would be used in connection with the certain-to-be forthcoming trial of Davlin. Those comments were overheard by (and not made to) someone associated with law enforcement. Accordingly, Crumpton's recitation of Sarah's nontestimonial conversation would not be barred as a violation of Davlin's Constitutional right to confront the witness against him. Davlin's second point of error is overruled.

We affirm the judgment of the trial court.


Bailey C. Moseley
Justice

Date Submitted:     May 6, 2016
Date Decided:       June 24, 2016

Publish