

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-18-00555-CR

Avery B. **CRAWFORD**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 186th Judicial District Court, Bexar County, Texas
Trial Court No. 2017CR0602
Honorable Jefferson Moore, Judge Presiding

Opinion by:     Liza A. Rodriguez, Justice

Sitting:     Sandee Bryan Marion, Chief Justice
Beth Watkins, Justice
Liza A. Rodriguez, Justice

Delivered and Filed: November 20, 2019

AFFIRMED

Avery B. Crawford was convicted of aggravated robbery, found to be a habitual offender, and sentenced to seventy-five years of imprisonment. On appeal, he argues the trial court erred in (1) denying his motion to quash the indictment's enhancement allegation; (2) submitting the enhancement allegation to the jury during the punishment phase; (3) overruling his objection to a commitment question; (4) overruling his objection under the Confrontation Clause during the testimony of complainant Angela Green; (5) denying his motion for mistrial; (6) overruling his

hearsay objection during Deputy Sheriff Ricardo Vijil's testimony; and (7) overruling his hearsay objection to the admission of a photographic lineup. We affirm.

## MOTION TO QUASH

The indictment in this case contains two enhancement allegations. The first enhancement allegation states that before the commission of the underlying offense of aggravated robbery, Crawford was convicted of felony possession of a controlled substance in Cause No. 2009-CR-12408W. The second enhancement allegation states that before the commission of the underlying offense, Crawford was convicted of felony theft in Cause No. 2014-CR-4919. In his motion to quash, Crawford stated that during the discovery process in the underlying case, he obtained "a certified copy of what purports to be the underlying paperwork reflecting the conviction in Cause No. 2009-CR-12408W." He attached this underlying paperwork in Cause No. 2009-CR-12408W to his motion to quash, including (1) the Information; (2) the Waiver of Indictment, Reading of Information and Rights Under Article 1.051 and 26.03 of the Code of Criminal Procedure; and (3) the Judgment of Conviction. In his motion, Crawford complained that paragraph four of the waiver of indictment included two blanks that had not been completed: one blank that should have reflected his plea and another blank that should have reflected the date he signed the waiver. According to Crawford, these two omissions invalidate the waiver. Crawford further argues if the waiver of indictment is invalid, then the trial court in Cause No. 2009-CR-12408W never obtained jurisdiction over the case and its judgment is void. He reasons that if the judgment in Cause No. 2009-CR-12408W is void, it cannot be used for enhancement of punishment in this case.

The Texas Constitution requires that the State obtain a grand jury indictment in a felony case unless the defendant waives that requirement. *See* TEX. CONST. art. 1, § 10; TEX. CODE CRIM. PROC. ANN. art. 1.05. Article 1.141 of the Texas Code of Criminal Procedure provides the specific means of waiving one's right to trial of felony charges by indictment:

> A person represented by legal counsel may *in open court or by written instrument* voluntarily waive the right to be accused by indictment of any offense other than a capital felony. On waiver as provided in this article, the accused shall be charged by information.

TEX. CODE CRIM. PROC. ANN. art. 1.141 (emphasis added); *see King v. State*, 473 S.W.2d 43, 46, 51 (Tex. Crim. App. 1971) (holding article 1.141 was not violative of article 1, section 10 of the Texas Constitution or violative of any federal constitutional requirements). Absent an indictment or valid waiver, a district court does not have jurisdiction over that case. *See Trejo v. State*, 280 S.W.3d 258, 261 (Tex. Crim. App. 2009); *Teal v. State*, 230 S.W.3d 172, 174-75 (Tex. Crim. App. 2007). "For the waiver to be effective, it must be intelligently, voluntarily, and knowingly given by the accused while represented by counsel." *King*, 473 S.W.2d at 52. In the absence of an accused's personal, intelligent, voluntary, and knowing waiver of indictment while represented by counsel, the felony information is void, and the trial court does not have jurisdiction to try an accused upon an information in a felony case. *See Lackey v. State*, 574 S.W.2d 97, 100 (Tex. Crim. App. 1978); *King*, 473 S.W.2d at 52.

By arguing that the judgment in Cause No. 2009-CR-12408W is void because the waiver of indictment was invalid, Crawford is bringing a collateral attack on a prior judgment of conviction. *See Rhodes v. State*, 240 S.W.3d 882, 887 (Tex. Crim. App. 2007). A defendant may collaterally attack a prior judgment of conviction only if he demonstrates the prior judgment is void. *Id.*; *see Egger v. State*, 62 S.W.3d 221, 224 (Tex. App.—San Antonio 2001, no pet.). As a reviewing court, "absent evidence of impropriety," we are required "to indulge every presumption in favor of the regularity of the proceedings and documents in the lower court." *Light v. State*, 15 S.W.3d 104, 107 (Tex. Crim. App. 2000). Thus, "the recitations in the records of the trial court, such as a formal judgment, are binding in the absence of direct proof of their falsity." *Breazeale v. State*, 683 S.W.2d 446, 450 (Tex. Crim. App. 1985) (op. on reh'g). The defendant has the burden

to provide direct evidence sufficient to overcome the presumption of the formal judgment's regularity. *Id*. at 451.

The judgment of conviction in Cause No. 2009-CR-12408W reflects that Crawford pled nolo contendere to possession of a controlled substance (PG 1 GRAM TO 4 GRAM), was charged by an information, and appeared in person with counsel. The judgment further reflects that the terms of Crawford's plea bargain were four years imprisonment and a $1,500 fine and that he was sentenced on December 9, 2009 in accordance with the terms of his plea bargain. The judgment does not reflect that Crawford waived his right to be charged by indictment; however, a judgment in Texas need not reflect a waiver of indictment. *See* TEX. CODE CRIM. PROC. ANN. art. 42.01; *Acosta v. State*, 650 S.W.2d 827, 828-29 (Tex. Crim. App. 1983). The prior judgment thus "carries with it a presumption of regularity and truthfulness, and such is never to be lightly set aside." *Breazeale*, 683 S.W.2d at 450-51.

Crawford argues that the "Waiver of Indictment, Reading of Information and Rights Under Articles 1.051 and 26.03 C.C.P." proves he did not properly waive his right to be charged by indictment because a blank for his plea was not completed and a blank for the date was not completed. As noted, for a waiver of indictment to be effective, "it must be intelligently, voluntarily, and knowingly given by the accused while represented by counsel." *King*, 473 S.W.2d at 52; *see also Lackey*, 574 S.W.2d at 100. The "Waiver of Indictment, Reading of Information and Rights Under Articles 1.051 and 26.03 C.C.P." in Cause No. 2009-CR-12408W recites that Crawford is "accused of the non-capital offense of POSS CS PG 1 1 GRAM to 4 GRAMS," is "represented by his/her attorney," has "been advised by his/her attorney and by the Court of the nature of the charge against his/her right not to be tried in this case except on the indictment of a Grand Jury" and "in open Court and in writing voluntarily and knowingly waives his/her right to be prosecuted by a Grand Jury indictment." The waiver further states that Crawford "announces

his/her election and consent to be charged by information and waives his/her right to the filing of

a complaint to support the information." The waiver continues as follows:

> Now comes the defendant in this cause, joined by his attorney of record, and waives the right guaranteed to him by Article 1.051 of the C.C.P. to ten days in which to prepare for trial of this cause. Further, the defendant, joined by his attorney of record, waives the right guaranteed by Article 26.03 of the Code of Criminal Procedure to the passage of two entire days, after service of a copy of the Indictment or Information in the cause on the defendant, before arraignment.
>
> Now comes the defendant in the above styled and numbered cause and states to the Court that he has been served with a copy of the information against him, has read and is aware of its contents and hereby waives the reading of the said information by the Court and enters his plea of _____ thereto, further certifies that his true and correct name is as shown by his signature below. SIGNED this ___ day of _____, A.D., 2009.

Crawford's signature is above the line for "Defendant." The waiver further recites the following

paragraph with respect to Crawford's attorney:

> Now comes the undersigned attorney for the above defendant and certifies to the Court that he has explained to the defendant the accusation against him alleged in said information and his right to have the information read to him by the Court. I have explained the procedural rights guaranteed by Art. 1.051 and 26.03 C.C.P. I hereby represent to the Court that I am satisfied that said defendant understands his rights and has knowingly and voluntarily waived the reading of the information in his cause, time to prepare and indictment.

Crawford's attorney's signature is above the line for "Attorney for the Defendant." The waiver

concludes with an "ORDER" by the district court:

> On this [stamp reflecting DEC 09 2009], the above named defendant having appeared before me with his/her attorney in open court, and the defendant having been fully advised of his/her rights and the nature of the charge against him/her and that he/she has a right to be prosecuted by indictment by a Grand Jury, the defendant intelligently, voluntarily and knowingly waived such right and the defendant and his/her attorney signed the foregoing written instrument in open Court, and the Court hereby approves the waiver of indictment and approves prosecution in this cause by information. The Court approves the waiver of reading of the information and waiver of time under 1.051 and 26.03 C.C.P.

The trial judge's signature is above the line for "Judge Presiding, 186th Judicial District Court,

Bexar County, Texas."

The waiver thus recites that while represented by counsel, Crawford intelligently, voluntarily, and knowingly waived his right to be charged by indictment. *See King*, 473 S.W.2d at 51-52. Absent direct proof of falsity, these recitations in the waiver are binding. *See Breazeale*, 683 S.W.2d at 450. The two blanks relied on by Crawford are not direct proof that these recitations are false. *See id*. We conclude the waiver includes the necessary requirements for it to be effective, *King*, 473 S.W.2d at 52, and the prior judgment of conviction in Cause No. 2009-CR-12408W "carries with it a presumption of regularity and truthfulness." *Breazeale*, 683 S.W.2d at 450-51. Because the prior judgment of conviction in Cause No. 2009-CR-12408W has not been shown to be void, we hold the trial court did not err by denying Crawford's motion to quash the indictment.

### JURY CHARGE

For the same reasons as expressed in his motion to quash the indictment, Crawford objected during the charge conference in the punishment phase to the jury being asked about the first habitual enhancement allegation relating to his prior conviction in Cause No. 2009-CR-12408W, arguing it was not a valid conviction. On appeal, Crawford incorporates the arguments from his first issue, claiming the enhancement allegation "was erroneously submitted to the jury because the underlying conviction alleged in that enhancement allegation was void." For the same reasons stated above, we hold the judgment of conviction in Cause No. 2009-CR-12408W was not void and could form a basis for the enhancement allegation. Therefore, we find no error by the trial court in submitting the issue to the jury.

### COMMITMENT QUESTION

Crawford argues that during voir dire, the trial court erred in overruling his objection to the prosecutor's improper commitment question. "A commitment question is one that commits a prospective juror to resolve, or refrain from resolving, an issue a certain way after learning a particular fact." *Hernandez v. State*, 390 S.W.3d 310, 315 (Tex. Crim. App. 2012). For a

commitment question to be proper, it must meet two criteria: (1) "one of the possible answers to that question must give rise to a valid challenge for cause"; and (2) it "must contain *only* those facts necessary to test whether a prospective juror is challengeable for cause." *Standefer v. State*, 59 S.W.3d 177, 182 (Tex. Crim. App. 2001) (emphasis in original). In considering whether a commitment question meets these two criteria, "we do not view the questioning of each juror in isolation" but instead look to the entire context of the question. *Lee v. State*, 206 S.W.3d 620, 624 (Tex. Crim. App. 2006).

> During voir dire, the prosecutor questioned the panel about the one-witness rule:

> Okay. So, this is what the one-witness rule says. Because the defendant gets to choose when and where a crime occurs, there are going to be situations, usually pretty regularly, where a—there's only one witness to the crime, the victim themselves [sic]. We have cameras everywhere these days. We have surveillance, we have people with camera phones. But there are so many times now where things are not captured on cameras. They don't exist in the location, they're not turned on. Various reasons. They don't work. So, what the one-witness rule says is, Can you convict someone based on the testimony of only one credible witness that you believe proved all the elements of the offense to you beyond a reasonable doubt? I'm going to explain this to you. What this means is someone takes the stand and proves each—through their [sic] testimony, proves each and every element of that offense to you beyond a reasonable doubt and you believe that person. You choose and you believe that person. Are you still going to say, "You know what, I always need a second person. I always need more than one person." Does that apply to anybody here? And if it does, that's totally fine. We just need to know because that's not what the law says. So, no one is going to require me to provide a second witness? Juror Number 48. Okay. Does anyone agree with Juror Number 48?

>> VENIREPERSON: I think it depends on the situation.

>> COURT: Can you stand up, please, sir?

>> STATE: Juror Number 58.

>> VENIREPERSON: I think it depends on the witness themselves [sic] and how convincing they [sic] are.

> Well, and that's—and that's what I'm saying. This—this question assumes that you believe them [sic]. Doesn't say you have to believe them [sic]. Because let's say you saw one witness—in this case, the victim—and you believe everything that person said, and it proved to you beyond a reasonable doubt. And you would say,

"You know what, I believe everything they [sic] said, it proves the case to me, but I always need a second person. I always need a second witness." Would that apply to you?

> DEFENSE: Your Honor, I think that's a commitment question on the part of the prosecution. I'm going to lodge an objection.

> COURT: Overruled. Go ahead.

In *Lee*, 206 S.W.3d at 622-24, the court of criminal appeals discussed the one-witness rule and how it applies to commitment questions. According to the court, prospective jurors cannot be validly challenged for cause simply because they indicate that they would need more than the testimony of one witness to convince them of guilt beyond a reasonable doubt. *Id*. at 622-23. However, a prospective juror who indicates she could not convict based on the testimony of one witness whom the prospective juror "*believed beyond a reasonable doubt and whose testimony proved every element of the indictment beyond a reasonable doubt*" can be validly challenged for cause. *Id.* at 623 (emphasis added).

Here, in considering the context of the prosecutor's question, it is apparent the prosecutor was asking about a hypothetical scenario in which the prospective juror had been convinced of the defendant's guilt beyond a reasonable doubt based solely on the testimony of one witness whose testimony established every element of the offense. Based on this hypothetical scenario, the question asked the prospective jurors whether, despite having been convinced of the defendant's guilt beyond a reasonable doubt, they would require additional corroborating evidence before they would convict. Pursuant to *Lee*, such a question was proper because it sought to determine if prospective jurors would hold the State to a higher burden of proof by requiring more than one witness, even though the prospective juror believed the testimony of the sole witness proved each element beyond a reasonable doubt. *See id*. Thus, we conclude the State's commitment question

gave rise to a valid challenge for cause. *See Standefer*, 59 S.W.3d at 182. Further, the State's commitment question included only facts "necessary to test whether a prospective juror is challengeable for cause." *Id*. We hold the trial court did not err in overruling Crawford's objection to the State's commitment question. *See id*.

## RIGHT TO CONFRONTATION

Crawford argues the trial court "erred in allowing for the admission of testimony from Angela Green that violated [his] right to confrontation as guaranteed by the Sixth Amendment to the United States Constitution." Crawford states that "[d]uring the course of the direct examination of Green, the State inquired as to a telephone conversation that allegedly took [place] between Sattiewhite [Crawford's mom] and [Crawford], which Green overheard while in the company of Sattiewhite." Crawford complains that the jury was allowed "to hear Green's testimony as to what Sattiewhite told her."[1] Crawford does not identify the specific testimony from Green that violated his right to confrontation, nor does he explain how he was harmed as a result. We therefore conclude he has improperly briefed this issue and waived any error. *See* TEX. R. APP. P. 38.1(i) (requiring an appellant's brief to "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record"); *Cardenas v. State*, 30 S.W.3d 384, 393 (Tex. Crim. App. 2000) (holding appellant waived issue on appeal because he inadequately briefed the issue by failing to address whether the alleged error was harmless and because the authorities he cited did not support his issue).

Alternatively, assuming Crawford had preserved this issue for appeal, we find no error by the trial court. At trial, Green testified that at the time of the incident, she lived in a house that had been divided into four separate units. Crawford and his mother, Barbara Sattiewhite, lived in

---

[1] Crawford limits this issue to the Confrontation Clause; he does not argue that Green testifying about this phone call she overheard was inadmissible hearsay.

another unit. According to Green, she considered Sattiewhite a friend and would lend her money from time to time. On the day in question, Green testified Sattiewhite owed her $300. So, Green drove Sattiewhite to the bank so that Sattiewhite could withdraw money to repay her. When they arrived at the bank, Sattiewhite withdrew cash from the ATM and gave Green $200, a portion of what she owed. According to Green, on the way home, Sattiewhite tried to call Crawford, but was unable to complete the call on her phone. She then asked Green if she could use Green's phone. Green testified she could hear both sides of the conversation and recognized the voice on the other end as Crawford's voice.

When Green was asked what she had overheard, defense counsel objected to hearsay. At a bench conference, the State argued Green's answer would fit within the co-conspirator exception to the hearsay rule. The judge then excused the jury and the State continued questioning Green so that the trial court could determine the admissibility of any statements. When asked again about Sattiewhite's phone call, Green answered that she heard Crawford saying he and his girlfriend "needed spaghetti from the store" and then Sattiewhite said, "I'm in the car with Angie [Green] now." According to Green, ten minutes after this phone call, Crawford robbed her. Green believed that Crawford and Sattiewhite planned the robbery. According to Green, she confronted Sattiewhite at the scene and Sattiewhite admitted she had "set up" Green. Defense counsel again argued Green's testimony was hearsay and eventually objected under the Confrontation Clause, which the trial court overruled. The jury was then brought back into the courtroom.

In the presence of the jury, Green testified that during Sattiewhite's phone call, she could hear Crawford tell Sattiewhite "he needed some hamburger meat and he wanted to borrow some money from her to get the hamburger meat and spaghetti." When asked what Sattiewhite said in response, Green testified, "She said—I guess he had said to her, 'Where are you at?' and she said, 'I'm in the car with Angie [Green] now.'" Green testified the phone call then ended. Ten minutes

later as Green was driving up the driveway closer to her unit, a man with a knitted cap pulled down over his face approached the passenger side of her car—the side where Barbara Sattiewhite was sitting—and said, "Give me your money." Green testified that Sattiewhite did not seem surprised and said nothing. According to Green, Sattiewhite said to the man, "What are you doing?" The man then ran around the car to the driver's side where Green had opened her car door. Green testified that at first, she thought "it was a joke" until she saw the gun in the man's hand. The man then put the gun to her head and said, "Give me your purse." Green recognized Crawford's voice and replied, "Avery [Crawford], I'm not giving you anything." According to Green, when she felt the metal of the gun against her heard, she was scared and afraid she was going to die. Crawford then "went around to his mother's side of the car" and "started explaining that his mother had said that [Green] owed her money" and "that's why he came around there to do that."[2] Green testified that Crawford took off the knitted cap that had been covering his face. According to Green, she got a good look at Crawford's face as they "stood there and talked." Crawford then took off running. Before the police arrived, Green and Sattiewhite talked about what had just happened, and Green told Sattiewhite she believed Sattiewhite had "set [her] up."

As noted previously, in his brief, Crawford does not specifically identify the testimony he claims violated his right to confrontation. He states that (1) during Green's direct examination, the State "inquired into a telephone conversation that allegedly took place between Sattiewhite and [Crawford], which Green overheard while in the company of Sattiewhite"; and (2) "the statement of Sattiewhite to [Crawford], [was] overheard by Green prior to the alleged assault." In reviewing Green's testimony about the phone call she overheard, we assume Crawford is complaining about

---

[2] Green testified at trial that she has never owed Sattiewhite any money.

Green testifying that Sattiewhite told her son over the phone, "I'm in the car with Angie [Green] now."

The Supreme Court has interpreted the Sixth Amendment's Confrontation Clause to bar "admission of testimonial statements of a witness who does not appear at trial unless [the witness is] unavailable to testify and the defendant ha[s] had a prior opportunity for cross-examination." *Davis v. Washington*, 547 U.S. 813, 821 (2006) (quoting *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004)). According to the supreme court, only "testimonial" statements "cause the declarant to be a 'witness' within the meaning of the Confrontation Clause." *Id*. "It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause." *Id*.

"While the exact contours of what is testimonial continue to be defined by the courts, such statements are formal and similar to trial testimony." *Burch v. State*, 401 S.W.3d 634, 636 (Tex. Crim. App. 2013). "In other words, testimonial statements are those 'that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.'" *Id*. (quoting *Crawford*, 541 U.S. at 52). In determining whether a hearsay statement is testimonial, the primary focus is upon the objective purpose of the interview or interrogation, not upon the declarant's expectations. *See Davis*, 547 U.S. 822-23; *Coronado v. State*, 351 S.W.3d 315, 324 (Tex. Crim. App. 2011). "Generally speaking, a hearsay statement is 'testimonial' when the surrounding circumstances objectively indicate that the primary purpose of the interview or interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *De La Paz v. State*, 273 S.W.3d 671, 680 (Tex. Crim. App. 2008) (citing *Davis*, 547 U.S. at 822-23). Whether a statement is testimonial is a question of law that we review de novo. *Id*.

Green testified she overheard Sattiewhite say on the phone, "I'm in the car with Angie [Green] now." Based on Green's testimony, this statement was made in an informal setting, on the way back from running an errand. It was not made in a formal and structured setting that would lend itself to being considered testimonial. *See Davis*, 126 S. Ct. at 2278. The statement made by Sattiewhite was to her son over the phone; it was not a statement made to law-enforcement personnel. *See Ohio v. Clark*, 135 S. Ct. 2173, 2182 (2015) ("Statements made to someone who is not principally charged with uncovering and prosecuting criminal behavior are significantly less likely to be testimonial than statements given to law enforcement officers."). Further, the statement was made before the robbery occurred; *no objective observer* could conclude this alleged statement by Sattiewhite to her son over the phone, made on the way back from running an errand, would be used at a later trial. *See Davis*, 547 U.S. 822-23; *see also Coronado*, 351 S.W.3d at 324 (explaining that under *Davis*, "the primary focus in determining whether an out-of-court statement is 'testimonial' is on the objective purpose of the interview or interrogation, not on the declarant's expectations"). Sattiewhite's statement simply lacks any indicia of ever being used as testimony at a later trial. *See Davlin v. State*, 531 S.W.3d 765, 771 (Tex. App.—Texarkana 2016, no pet.) (holding testimony by firefighter about what he had overheard the defendant's wife say over the phone to an unknown person about her husband just having engaged in an armed standoff with firefighters was not testimonial because her "statements were being made to a person other than someone associated with law enforcement and, thus, could hardly have been said by her with the idea that they would be used in connection with the certain-to-be forthcoming trial of" her husband); *see also Martinez v. State*, No. 02-18-00447-CR, 2019 WL 4678426, at *4 (Tex. App.— Fort Worth Sept. 26, 2019, no pet. h.) (holding testimony from a third party that appellant's girlfriend was scared to testify and still had feelings for appellant was not testimonial because when the statements were made, "they lacked any indicia of ever being used as testimony") (not

designated for publication). Because Green's statement about what Sattiewhite said over the phone was not testimonial, Crawford's right to confrontation was not violated. *See Vinson v. State*, 252 S.W.3d 336, 342 (Tex. Crim. App. 2008). Therefore, the trial court did not err in overruling Crawford's objection under the Confrontation Clause to Green testifying about the phone call between Sattiewhite and Crawford.

### MOTION FOR MISTRIAL

Crawford also argues the trial court erred in denying his request for a mistrial. During direct examination, Green was asked how long she had known Crawford. She responded, "Not that long. He had just gotten out of prison." Defense counsel immediately objected, and the trial court sustained the objection. Upon defense counsel's request, the trial court instructed the jury to disregard Green's statement:

> Members of the jury, I want you to disregard the last remark about Mr. Crawford. [It] has nothing to do with this case. It doesn't establish anything as far as any of the facts that we're going over for today in regards to whatever took place on June 2, 2016.

The trial court then asked defense counsel if he wished for any further admonishments. Defense counsel replied, "No, Your Honor, but I feel compelled to move for a mistrial based on this extraneous statement by Ms. Green that was not even asked about, was just volunteered." The trial court denied the motion for mistrial.

We review the trial court's denial of a motion for mistrial for abuse of discretion. *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004). "A mistrial is the trial court's remedy for improper conduct that is 'so prejudicial that expenditure of further time and expense would be wasteful and futile.'" *Id*. (quoting *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999)). "Only in extreme circumstances, where the prejudice is incurable, will a mistrial be required." *Id*.

"Ordinarily, a prompt instruction to disregard will cure error associated with an improper question and answer, even one regarding extraneous offenses." *Ovalle v. State*, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000). A prompt instruction is not curative only "where the reference was clearly calculated to inflame the minds of the jury or was of such damning character as to suggest it would be impossible to remove the harmful impression from the jurors' minds." *Rojas v. State*, 986 S.W.2d 241, 250 (Tex. Crim. App. 1998). Here, the State did not elicit Green's reference to Crawford having just gotten out of prison. While Crawford complains Green had been instructed before her testimony to not refer to Crawford's previous offenses, "[m]ost trial lawyers would readily attest that witnesses sometimes mistakenly deviate from carefully conveyed instructions." *Webb v. State*, No. 14-06-00445-CR, 2007 WL 1086992, at *2 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd) (not designated for publication). Her answer related to why she had not known him for a lengthy time and does not appear to be clearly calculated to inflame the minds of the jury. *See Rojas*, 986 S.W.2d at 250; *see also Webb*, 2007 WL 1086992, at *2 (holding witness's response that appellant "did not accompany her when she relocated because he was in prison was a natural retort to the question asked" and thus not "calculated to inflame the minds of the jury"). Further, Green did not refer to a specific extraneous offense and her general reference was fleeting. *See Rojas*, 986 S.W.2d at 250. We therefore conclude the trial court's prompt instruction to disregard cured the error associated with Green's answer. *See id.* (holding trial court's instruction to disregard the witness's statements about the defendant's "past anger" and "violence" cured any error); *Kipp v. State*, 876 S.W.2d 330, 339 (Tex. Crim. App. 1994) (holding witness's vague reference to extraneous offense was cured by instruction to disregard); *Tennard v. State*, 802 S.W.2d 678, 685 (Tex. Crim. App. 1990) (holding witness's reference to meeting up with appellant "[w]hen he first got out of the penitentiary" was cured by prompt instruction to disregard); *Jackson v. State*, 495 S.W.3d 398, 421 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd) (holding

testimony by defendant's girlfriend that defendant "had a record from Louisiana" did not warrant mistrial because the trial court immediately instructed the jury to disregard the testimony), *cert. denied*, 138 S. Ct. 207 (2017).

**HEARSAY**

Crawford argues the trial court abused its discretion in overruling his hearsay objections during Deputy Sheriff Ricardo Vijil's testimony and to a photographic lineup admitted in evidence. Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. TEX. R. EVID. 801(d). For hearsay to be admissible, it must fit into an exception provided by a statute or the Rules of Evidence. TEX. R. EVID. 802. We review the admissibility of an out-of-court statement under the exceptions to the general hearsay exclusion rule for an abuse of discretion. *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003). "An abuse of discretion occurs only when the trial judge's decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree." *Id*. (quoting *Cantu v. State*, 842 S.W.2d 667, 682 (Tex. Crim. App. 1992)).

### A. Deputy Sheriff Vijil's Testimony

Deputy Sheriff Vijil testified that on June 2, 2016, he responded to a 911 call. When he arrived at the scene, he made contact with Angela Green and Barbara Sattiewhite. Deputy Sheriff Vijil testified without objection that Sattiewhite was cooperative and that she identified her son, Crawford, as the assailant. According to Deputy Sheriff Vijil, Green "was visibly upset and . . . shaken." Green "was complaining that her chest hurt" and "that she had a headache," so the officers "called the ambulance service to come and check on her." On appeal, Crawford complains about the following exchange at trial between Deputy Sheriff Vijil and the prosecutor:

Q:      Now—so as you made contact with Angela Green and she was very excited and had EMS called, did she immediately tell you what had happened when you first made contact with her?

A:      Yes.

DEFENSE: Object to hearsay, Your Honor, on the part of the officer.

STATE: Your Honor, I would—I would say it's [an] excited utterance. We established the fact of her physical condition, we—we've established her physical condition, her state of mind, and the fact she was excited enough to require medical attention.

COURT: Overruled. Go ahead.

Q:      You can answer the question. What did she immediately say to you about what had happened?

A:      She immediately said that—that Mrs. Barbara Sattiewhite's son had just tried to rob her at gunpoint.

Q:      Okay. And what specifically did she say where the gun was placed?

A:      She said that he placed it to her head and demanded—and demanded money.

Q:      And by Barbara Sattiewhite's son, you mean Avery Crawford, correct?

A:      Yes.

Q:      She identified him by name?

A:      Yes.

Q:      And she told you that she knew him?

A:      Yes.

Rule 803(2) sets forth the excited utterance exception to the general hearsay exclusion rule. *See* TEX. R. EVID. 803(2). An excited utterance is "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." *Id*. "The basis for the excited utterance exception is a psychological one, namely, the fact that when a man is in the instant grip of violent emotion, excitement or pain, he ordinarily loses the capacity for reflection necessary to the fabrication of a falsehood and the 'truth will come out.'" *Zuliani*, 97 S.W.3d at 595 (citation omitted). "In determining whether a hearsay statement is admissible as an

excited utterance, the court may consider the time elapsed and whether the statement was in response to a question." *Id*. "However, it is not dispositive that the statement is an answer to a question or that it was separated by a period of time from the startling event; these are simply factors to consider in determining whether the statement is admissible under the excited utterance hearsay exception." *Id*. at 596. "The critical determination is whether the declarant was still dominated by the emotions, excitement, fear, or pain of the event or condition at the time of the statement." *Id*. (citations omitted). "Stated differently, a reviewing court must determine whether the statement was made under such circumstances as would reasonably show that it resulted from impulse rather than reason and reflection." *Id*. (citations omitted).

As noted, Deputy Sheriff Vijil testified that (1) Green appeared visibly upset and shaken; (2) Green was complaining of chest pains and a headache; (3) because of the symptoms that Green was exhibiting, the officers called EMS, and (4) after calling EMS, Green immediately told him that Crawford "had just tried to rob her at gunpoint." This evidence supports the trial court's determination that Green was still dominated by the emotions, fear, or pain of the event when she communicated with Deputy Sheriff Vijil. *See Zuliani*, 97 S.W.3d at 595. Thus, the trial court did not abuse its discretion in overruling Crawford's hearsay objection.

Moreover, even if the trial court had abused its discretion in overruling Crawford's hearsay objection, reversal would not be warranted in this case. "It is well settled that the erroneous admission of testimony is not cause for reversal 'if the same fact is proven by other testimony not objected to.'" *Smith v. State*, 499 S.W.3d 1, 6 (Tex. Crim. App. 2016) (quoting *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998)); *see also Coble v. State*, 330 S.W.3d 253, 282 (Tex. Crim. App. 2010) ("We have often held that erroneously admitting evidence 'will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling.'") (quoting *Leday*, 983 S.W.2d at 718). Here, Investigator Patricia Nava

testified without objection that at the scene on the day of the incident, Green identified Crawford by name as the assailant. Further, Green also testified at trial that Crawford, a man she knew, was the person who held a gun to her head and demanded her purse. Finally, Deputy Sheriff Vijil testified without objection that Sattiewhite identified her son, Crawford, as the assailant. Therefore, even if the trial court had erred in overruling Crawford's hearsay objection during Deputy Sheriff Vijil's testimony, such error would be harmless. *See Smith*, 499 S.W.3d at 6.

### B. Photographic Lineup

Crawford complains the trial court erred in admitting State's Exhibit 2, a photographic lineup, because the exhibit contains the following hearsay statement attributed to Green: "I met Avery Crawford thru his mom which [sic] set me up from Chase [B]ank by my phone. My life has and never will be the same." As noted, "[i]t is well settled that the erroneous admission of testimony is not cause for reversal 'if the same fact is proven by other testimony not objected to.'" *Smith*, 499 S.W.3d at 6 (quoting *Leday*, 983 S.W.2d at 718). Green testified that she met Crawford through his mother, Sattiewhite, and that she believed they had conspired to rob her. She also testified in detail how her life had changed since the robbery. According to Green, she does not drive anymore and does not leave her house "unless it's necessary." Before the robbery, she would travel out of town and "do things with my family," but now she does not and stays in her house. Green explained that she is afraid and always has to have someone around her. Because the same facts as the hearsay statement included in State's Exhibit 2 were proven by other testimony not objected to, there is no cause for reversal. *See id*.

### CONCLUSION

For the reasons stated above, we hold the trial court did not err in denying Crawford's motion to quash the indictment's enhancement allegation and in submitting the enhancement allegation to the jury during the punishment phase. We further hold the trial court did not err in

overruling Crawford's objection to the State's commitment question during voir dire. Although we hold Crawford waived his issue regarding the Confrontation Clause, even if we assume he did not waive the issue, we would still find no error by the trial court. We also hold the trial court did not err in denying Crawford's motion for mistrial or in overruling his hearsay objection during Deputy Sheriff Ricardo Vijil's testimony. Finally, we find no cause for reversal with respect to the admission of State's Exhibit 2. Therefore, we affirm the judgment of the trial court.

Liza A. Rodriguez, Justice

Publish